# Staunton

ROSS ALLEN WESTON v. COMMONWEALTH OF VIRGINIA.

September 10, 1953.

Record No. 4117.

Present, All the Justices.

The opinion states the case.

*Goolrick & Ashby* and *Wendell Berge* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *Frederick T. Gray, Assistant Attorney General,* for the Commonwealth.

*Garland Clarke, Arthur B. Hanson* and *Elisha Hanson,* amici curiae.

EGGLESTON, J., delivered the opinion of the court.

This is a summary proceeding for contempt instituted by rule against Ross Allen Weston, charging him with having publicly uttered certain "defamatory statements consisting of contemptuous and insulting language addressed to, or published of, a judge of the Circuit Court of Arlington county" with respect to his decision in a "proceeding had, or to be had, in said court." The two judges of that court deemed it improper that they hear the case, and Hon. J. Hume Taylor, Judge of the Court of Law and Chancery of the city of Norfolk, was designated for that purpose.

The defendant filed a demurrer challenging the legal sufficiency of the allegations in the rule, which was overruled. In his answer he admitted having made the critical utterances with respect to the court's decision, but disclaimed "any intention of bringing either the court or the judge thereof into disrepute, or to attack the integrity of the said judge." His utterances were, he said, "in the exercise of what he believed to be his right under the Constitution of the United States and the Virginia Declaration of Rights to criticize the said decision."

Upon consideration of the evidence adduced the judge designate entered an order adjudging the defendant guilty of contempt and imposing on him a fine of $100 and the costs of the prosecution. Upon motion of the attorney for the Commonwealth the fine and costs were

"suspended." To review that judgment we granted the defendant a writ of error.

Counsel for the defendant insist, and the Attorney General agrees, that this is a final judgment to which a writ of error lies under Code, § 19-256, and we shall deal with it as such. *Berman* v. *United States*, 302 U. S. 211, 58 S. Ct. 164, 82 L. ed. 204. Cf. *duPont de Nemours & Co.* v. *Universal Moulded Products Corp.*, 189 Va. 523, 525, 526, 53 S. E. (2d) 835, 836.

The prosecution is under Code, § 18-255, the pertinent part of which reads thus:

"The courts and judges may issue attachments for contempt, and punish them summarily, only in the cases following:

\* \* \* \* \* \* \*

"(3) Obscene, contemptuous or insulting language addressed to or published of a judge for or in respect of any act or proceeding had, or to be had, in such court, or like language used in his presence and intended for his hearing for or in respect of such act or proceeding; \* \* \* ."[1]

The evidence is before us on a stipulation of facts which discloses that the defendant is the pastor of the Arlington Unitarian Church; that on Sunday, May 18, 1952, in a sermon, he publicly criticized the decision of Hon. Walter T. McCarthy, Judge of the Circuit Court of Arlington county, in the case of *Rocco Paolicelli, et al.* v. *Alan L. Dean, et al.*, that certain federal employees were disqualified to hold office on the County Board of Arlington county. Excerpts of the defendant's remarks were given to the press and published in the Washington Post, a newspaper published in Washington, copies of which were circulated in Arlington county.

The particular utterances upon which the Commonwealth relies to sustain the judgment below are these:

---

[1] This provision has its origin in Acts 1904, ch. 194, p. 309, with the addition of the words "or published of" by the revisors of the Code of 1919, § 4521. See revisors' note.

"I want now to indicate what seem to me to be the basic attitudes that liberals must maintain and cultivate if they are to render significant service in meeting the mounting crisis of our time * * * .

"Finally, and most important of all, we must be alert to the encroachments on the freedom of persons. The stealth, the intrigue, and the wicked designs of the illiberal are a constant menace. They leap at us from the left waving the most impressive anti-fascist banners; or they creep upon us from the right clothed in the most innocent garbs.

"Sometimes these forces are clothed in the gown of the justices of the law. I refer, of course, to Judge McCarthy and his recent decision in the Dean case that employees of the Federal Government cannot hold office in Arlington county. Judge McCarthy bases his decision on an antiquated statute passed in 1787 which states that no employees of the United States government may hold public office in Virginia. Yet the Constitution of the Commonwealth of Virginia states very clearly that any citizen who is eligible to vote may hold public office. * * * Still, it is the ruling of Judge McCarthy that the statute of 1787 takes precedence over the Constitution which was adopted in 1901. Therefore, he concludes, that 'no man can serve two masters.'

* * * * * * *

"What, I ask Judge McCarthy, has this Biblical reference got to do with the Dean case? I see no possible conflict in members of the County Board being employees of the Federal Government. These men do not serve two masters; they serve only one—the people of the United States of America; and, as such, I think they are fulfilling the spirit of the Sermon on the Mount. * * *

"What has Judge McCarthy accomplished by his decision? Has he strengthened the pillars of democracy in this nation? Has he deepened the roots of our civil liberties? Has he contributed to the growth of freedom when freedom is being attacked everywhere in the world today? No! He has segregated a group of our citizens—our federal em-

ployees. He has taken away their civil rights, and he has made them into second-class citizens. * * *

"I do not know Judge McCarthy, and, therefore, I am not in a position to judge his personal qualifications for holding the distinguished office that he does. Yet, I have no doubt about his intellectual integrity or his mental honesty. I am sure that he is an honorable man. But I do know that Judge McCarthy holds his present office by virtue of appointment by a state legislature which is under the domination of Senator Byrd. Furthermore, I know that Judge McCarthy possesses the power to fill vacancies when they occur on our County Board. I also know that if Judge McCarthy's decision is sustained, it will create vacancies on the County Board. Is the judge who creates the vacancies by his ruling the man who should fill those vacancies? I do not think so. Thus, I am forced to the conclusion that Judge McCarthy's decision coincides with the interests of the Byrd 'organization.' It is true, isn't it? 'No man can serve two masters.'

"It is my hope that the Supreme Court of Appeals of Virginia will overrule Judge McCarthy's decision. If it does not, then every liberal in the Commonwealth of Virginia must work for the passage of new legislation in the General Assembly to outlaw the statute of 1787 as a relic of an age now gone forever. * * * "

It further appears from the stipulation that at the time these remarks were made a final judgment had been entered by Judge McCarthy in the *Paolicelli Case*.

■ The defendant concedes that in terms the statute (section 18-255(3)) embraces the use of "obscene, contemptuous or insulting language addressed to or published of a judge" with respect to a "proceeding had"—that is, a matter which has been terminated—as well as one "to be had," or a future proceeding. In his demurrer he raised these two issues:

(1) In so far as the statute empowers courts and judges to punish summarily in a contempt proceeding for spoken

or written words, however insulting or contemptuous, with respect to a proceeding which has been terminated, it is unconstitutional and void in that it infringes upon the privilege of free speech and press guaranteed by section 12 of the Virginia Constitution and by the First and Fourteenth Amendments to the Federal Constitution.

(2) The spoken words with which we are here concerned do not constitute contempt, because they are not "obscene, contemptuous or insulting" within the meaning of the statute, and do not "create [a] clear and present danger to the administration of justice in Arlington county by the Circuit Court of said county."

Section 12 of the Virginia Constitution reads: "That the freedom of the press is one of the great bulwarks of liberty, and can never be restrained but by despotic governments; and any citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right."[2]

Section 58 of the Virginia Constitution provides in part: " * * * The General Assembly shall not pass * * * any law abridging the freedom of speech or of the press. * * * "

The First Amendment to the Federal Constitution provides that, "Congress shall make no law * * * abridging the freedom of speech, or of the press." It is now settled by the decisions of the Supreme Court of the United States that while this provision is not a restraint upon the powers of the States, the States are by force of the due process clause of the Fourteenth Amendment precluded from abridging the freedom of speech or of the press. *Near* v. *State of Minnesota*, 283 U. S. 697, 707, 51 S. Ct. 625, 628, 75 L. ed. 1357; *Grosjean* v. *American Press Co.*, 297 U. S. 233, 243, 56 S. Ct. 444, 446, 80 L. ed. 660.

---

[2] The first part of this section was written in the Declaration of Rights, adopted by the Convention of Virginia on June 12, 1776. That portion of the section following the semi-colon comes to us from the Constitution of 1869, with slight changes in verbiage by the Constitutional Convention of 1902.

Undoubtedly, the weight of authority is to the effect that criticism of the conduct of a judge or a court with respect to matters finally disposed of does not constitute contempt, even though it may be libelous. 17 C. J. S., Contempt, § 30-b, pp. 44, 45; 12 Am. Jur., Contempt, § 31, p. 413; *Id.*, § 36, pp. 415, 416, and cases there cited.

In *Burdett* v. *Commonwealth*, 103 Va. 838, 48 S. E. 878, 68 L. R. A. 251, 106 Am. St. Rep. 916, in an opinion written by Judge Keith in 1904, this court, after a careful review of the subject, declined to adopt the majority view. In that case Burdett, after having been convicted for the illegal sale of intoxicating liquor under a number of indictments, published in a local newspaper a letter criticizing the trial judge and charging that his judicial conduct was "actuated by vicious and corrupt motives." The opinion characterized the letter as being "a gross and insulting libel." We there sustained a judgment of contempt against the writer of the letter, holding that such a libelous publication "degrades the administration of justice by bringing the courts into disrepute." (103 Va., at page 846.) Punishment by contempt for such a publication did not, we said, constitute "an invasion of the liberty of the press." (103 Va., at page 847.)

In the later case of *Boorde* v. *Commonwealth*, 134 Va. 625, 114 S. E. 731, decided in 1922, we adhered to the principles enunciated in *Burdett* v. *Commonwealth*, *supra*. We upheld a judgment convicting Boorde, a minister, of contempt for his remarks in a speech at a church social wherein he referred to a local circuit judge as a "wet judge" who could not be expected "to give fair decisions in cases where his sons" made a practice of defending alleged culprits charged with the violation of prohibition laws. We there pointed out that while the constitutional right of free speech permits a fair criticism of a judicial act it does not permit an unwarranted charge of conscious wrongdoing. (134 Va., at page 634.)

But counsel for the defendant argue that the holdings in these two cases have been overturned by the later decisions of the Supreme Court in *Bridges* v. *State of California*, 314 U. S. 252, 62 S. Ct. 190, 86 L. ed. 192, 159 A. L. R. 1346 (1941); *Pennekamp* v. *State of Florida*, 328 U. S. 331, 66 S. Ct. 1029, 90 L. ed. 1295 (1946); and *Craig* v. *Harney*, 331 U. S. 367, 67 S. Ct. 1249, 91 L. ed. 1546 (1947). These three cases overturned convictions for contempt in State courts based upon criticisms of the conduct of trial judges with respect to pending actions. In each case it was held that the utterances or publications did not satisfy the "clear and present danger" rule which requires "that the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished" as contempt. *Bridges* v. *State of California*, *supra* (314 U. S., at page 263). See also, *Pennekamp* v. *State of Florida*, *supra* (328 U. S., at page 334); *Craig* v. *Harney*, *supra* (331 U. S., at pages 372, 373).

However, these decisions involved the consideration of the common law right to punish for contempt. No statutes were involved, a circumstance which was thus emphasized by the majority opinion in the *Bridges Case*:

"It is to be noted at once that we have no direction by the legislature of California that publications outside the court room which comment upon a pending case in a specified manner should be punishable. As we said in *Cantwell* v. *Connecticut*, 310 U. S. 296, 307, 308, 60 S. Ct. 900, 904, 905, 84 L. ed. 1213, 128 A. L. R. 1352, such a 'declaration of the State's policy would weigh heavily in any challenge of the law as infringing constitutional limitations.' But as we also said there, the problem is different where 'the judgment is based on a common law concept of the most general and undefined nature.' *Id.*, 310 U. S. at page 308, 60 S. Ct. at page 905, 84 L. ed. 1213, 128 A. L. R. 1352. Cf. *Herndon* v. *Lowry*, 301 U. S. 242, 261-264, 57 S. Ct. 732, 740-742, 81 L. ed. 1066. For here the legislature of California has not appraised a particular kind of situation

and found a specific danger sufficiently imminent to justify a restriction on a particular kind of utterance. The judgments below, therefore, do not come to us encased in the armor wrought by prior legislative deliberation. Under such circumstances, this court has said that 'it must necessarily be found, as an original question' that the specified publications involved created 'such likelihood of bringing about the substantive evil as to deprive [them] of the constitutional protection.' *Gitlow* v. *New York*, 268 U. S., 652, 671, 45 S. Ct. 625, 631, 69 L. ed. 1138." (314 U. S., at pages 260, 261, 62 S. Ct., at pages 192, 193.)

In adopting our statute the General Assembly has appraised the situation and declared that "Obscene, contemptuous or insulting language addressed to or published of a judge for or in respect of any act or proceeding had," or terminated, as well as one "to be had," may interfere with the lawful administration of justice and constitute contempt.

In the face of this legislative declaration of the public policy of the State we cannot say, as counsel for the defendant would have us say, that any critical utterance with respect to judicial conduct in an ended case, however libelous, insulting, or contemptuous it may be, is protected against a contempt prosecution by the constitutional guaranty of freedom of speech and press. Freedom of speech is a right which the courts have zealously guarded and maintained. But the right has its limitations and the State may punish its abuse.[3] The right may not be exercised in such manner as to destroy respect for the courts, the very institution which is the guardian of that right. The dignity of the courts and the duty of the citizens to respect them are necessary adjuncts to the administration of justice. Scandal-

---

[3] *Near* v. *State of Minnesota*, 283 U. S. 697, 708, 51 S. Ct. 625, 75 L. ed. 1357; *Chaplinsky* v. *State of New Hampshire*, 315 U. S. 568, 571, 572, 62 S. Ct. 766, 86 L. ed. 1031; *Beauharnais* v. *People*, 343 U. S. 250, 255, 256, 72 S. Ct. 725, 96 L. ed. 919; *McWhorter* v. *Commonwealth*, 191 Va. 857, 864, 63 S. E. (2d) 20, 23.

izing the court by libelous attacks upon judicial conduct in an ended case, as well as one which is pending before it, may seriously interfere with the administration of justice. While such an attack may not affect the particular litigation which has been terminated, it may very well affect the course of justice in future litigation and impair, if not destroy, the judicial efficiency of the court or judge subjected to attack.

We are not impressed with the argument that because of the constitutional guaranty of freedom of speech and press the State is without power to punish in a contempt proceeding unwarranted and improper criticism of judicial conduct in litigation which has been terminated, but must resort to a criminal libel proceeding for that purpose. We are of opinion that false and libelous utterances as to a judge's conduct of an ended case may or may not be punishable contempt, depending upon whether such utterances present a clear and present danger to the administration of justice.

This brings us to the consideration as to whether the utterances complained of were punishable under the terms of the statute. Were they "obscene, contemptuous or insulting?" Did they constitute a clear and present danger or obstruction to the administration of justice? If these questions demand an affirmative answer the utterances were punishable as contempt. On the other hand, if the answers are negative the spoken words were permissible criticism of the judge's decision.

In determining whether the language used by the defendant constitutes contempt it must be borne in mind that since this is a proceeding "to preserve the power and vindicate the dignity of the court," it is criminal and punitive in character, and the guilt of the alleged contemner must be established beyond a reasonable doubt. *Local 333B, United Marine Division, etc.* v. *Commonwealth*, 193 Va. 773, 779, 71 S. E. (2d) 159, 163; 4 Mich. Juris., Contempt, § 34, p. 278.

This defendant began the utterances complained of with a warning that his hearers must "be alert to the encroachments on the freedom of persons;" that the "stealth, the intrigue, and the wicked designs of the illiberal are a constant menace;" and that "Sometimes these [illiberal] forces are clothed in the gown of the justices of the law." The speaker then proceeds to criticize the soundness of Judge McCarthy's decision, characterizing it as based "on an antiquated statute," and having the effect of "segregating" "federal employees" and depriving them of "their civil rights." After expressing "no doubt" as to Judge McCarthy's "intellectual integrity or his mental honesty," and the speaker's confidence "that he is an honorable man," he states that the judge "holds his present office by virtue of appointment by a State legislature which is under the domination of Senator Byrd," and that his "decision coincides with the interests of the Byrd 'organization.'"

Does such language meet the requirements of the statute so as to constitute contempt? In our opinion it does not. Certainly it is not "obscene," nor do we think it is "insulting" or libelous. By implication it may be interpreted as characterizing the judge as a member of the "illiberal" forces, or one whose views are conservative. But such is not generally accepted as an insult. Indeed, some persons, including judges, may prefer to be spoken of as "conservatives" or "illiberals" rather than as "liberals," "new dealers," or "fair dealers."

Neither is it "contemptuous or insulting," within the meaning of the statute, to say that a judge was elected by a legislature which is under the domination of a political faction and that his decision in a particular case "coincides with the interests" of that faction. There is no charge in the utterances that the judge's decision was prompted by the motive to serve the interests of that faction, or by any other improper motive. On the contrary, the speaker expressed confidence in the judge's "intellectual integrity or his mental honesty." A decision based upon sound principles and

prompted by the highest motives might nevertheless "coincide with" the interests of a particular political faction.

Nor, in our opinion, do the speaker's utterances constitute a clear and present danger to the administration of justice, or bring the judge into disrepute, or destroy the confidence of the people in his administration of justice.

The language spoken may be on the border line but we cannot say that beyond a reasonable doubt it oversteps the line and meets the essential requirements of the statute and constitutes contempt.

While it may not be within our function to appraise the merits of the speaker's criticism of Judge McCarthy's decision, it may be noted that, after a full hearing, in a carefully prepared opinion we upheld that decision. *Dean* v. *Paolicelli,* 194 Va. 219, 72 S. E. (2d) 506.

For these reasons we are of opinion that the lower court should have sustained the demurrer to the rule. Accordingly, the judgment is reversed and the rule dismissed.

*Reversed and dismissed.*