## Richmond

KERMIT W. SALYER v. COMMONWEALTH OF VIRGINIA.

March 10, 1969.

Record No. 6911.

Present, Eggleston, C.J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*M. Caldwell Butler* (*Eggleston, Holton, Butler & Glenn,* on brief), for plaintiff in error.

*M. Harris Parker, Assistant Attorney General* (*Robert Y. Button, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

Kermit W. Salyer, the defendant, was cited for contempt of court by a rule alleging that he had published "certain vile, contemptuous and insulting language . . . of and concerning the Judge" of the Circuit Court of Franklin County "in an 'Editor's Note' . . . appearing in the Franklin News Post in the issue dated October 5, 1967."

In a summary proceeding, the defendant was found guilty of contempt and was sentenced to jail for a term of ten days. He was granted a writ of error to the final order incorporating the conviction and imposition of sentence.

The record shows that the defendant is the editor and publisher of The Franklin News Post, a newspaper published in Rocky Mount, Virginia, the county seat of Franklin County. The newspaper has general circulation in the county.

The contempt citation against the defendant had its background in a petition filed in the lower court on April 5, 1967, by approximately eighty voters seeking a reapportionment of the magisterial districts of Franklin County. A motion to dismiss the petition was filed by opponents of the redistricting, and when the petitioners failed, after several extensions of time, to answer the motion, the petition was dismissed on September 25, 1967, by the judge of the lower court.

On September 29, 1967, a lengthy editorial entitled "Franklin County's Non-Redistricting" appeared in The Roanoke Times, a newspaper published in the city of Roanoke. Although the editorial acknowledged that the "redistricting petitioners" had "abandoned" their "effort," it was critical of the "decision" of the judge of the lower court in dismissing the petition for redistricting.

On October 5, 1967, the editorial of The Roanoke Times was reprinted on the front page of The Franklin News Post. Following the reprinted editorial, this comment appeared:

> "(Editor's Note—We believe the citizens of Franklin County will be interested in seeing the editorial above which was published in The Roanoke Times, Friday, September 29.
>
> "The writer of the editorial throws a polysyllabic smokescreen over the entire question.
>
> "Freely translated, the editorial says, 'Judge Jones didn't have the guts to order a redistricting or to set up a redistricting commission as is being done in other counties of the state.'
>
> "We would like to add our two cents worth to this translation too. When a judge can't see the inequity in such a spread in population as Rocky Mount district's 8880 and Snow Creek's 2540, seems like the court is blind.
>
> "Petitions were signed by eighty citizens of the county asking that the county be redistricted. That was enough of a mandate to Judge Jones to go ahead and redistrict or appoint a commission. These petitions signed by eighty people were thrown out on a protest from four people. That is democracy?—KWS.)"

The citation for contempt was issued against the defendant on October 11, 1967, and he appeared in response thereto on October 16. At the contempt hearing, the defendant read into the record a statement expressing his critical views concerning the judge of the lower court. While the judge, in his oral findings, termed the defend-

ant's in-court statement "contemptuous," the final order of the court placed its conviction of the defendant solely upon the matter published in the "Editor's Note" in the October 5, 1967, issue of The Franklin News Post. Accordingly, we will limit our consideration of the defendant's alleged contempt to that matter.

The defendant was prosecuted pursuant to Code, § 18.1-292, which provides for summary punishment for contempt in certain instances, including:

> "Vile, contemptuous or insulting language addressed to or published of a judge for or in respect of any act or proceeding had, or to be had, in such court, or like language used in his presence and intended for his hearing for or in respect of such act or proceeding."

The final order of the trial court adjudged the defendant guilty of contempt for publishing vile, contemptuous and insulting language of the trial judge "by reason of proceedings heretofore had," in other words, for criticism with respect to an ended case. The test for determining whether such conduct is punishable was recognized and applied by this court in *Weston v. Commonwealth*, 195 Va. 175, 184, 77 S. E. 2d 405, 409-410 (1953), as follows:

> ". . . [F]alse and libelous utterances as to a judge's conduct of an ended case may or may not be punishable contempt, depending upon whether such utterances present a clear and present danger to the administration of justice."

We also said in the *Weston* case that "the guilt of the alleged contemner must be established beyond a reasonable doubt." 195 Va., at 184, 77 S. E. 2d, at 410.

Our crucial inquiry thus becomes whether the statements contained in the "Editor's Note" published by the defendant constituted, beyond a reasonable doubt, "a clear and present danger to the administration of justice."

Again referring to the *Weston* case, we find the rule for determining whether "a clear and present danger" is posed by an out-of-court attack upon the conduct of an ended case. Such danger exists if it appears that the attack probably will "affect the course of justice in future litigation and impair, if not destroy, the judicial ef-

ficiency of the court or judge subjected to attack." 195 Va., at 184, 77 S. E. 2d, at 409. And the rationale of the rule is that "[t]he dignity of the courts and the duty of the citizens to respect them are necessary adjuncts to the administration of justice." 195 Va., at 183, 77 S. E. 2d, at 409.

The language published by the defendant in his "Editor's Note," depicting the trial judge as without "guts to order a redistricting" and as "blind" to "the inequity" of mathematical disparities in population, was intemperate and unwarranted. That is especially so because The Roanoke Times editorial which preceded the "Editor's Note" clearly informed the reader that the redistricting petition was "abandoned" by the "redistricting petitioners." But, by the same token, we fail to see how an attack so transparently unfounded in nature could mislead the public and affect the course of justice in future litigation.

We are of opinion that it does not appear beyond a reasonable doubt that the language published by the defendant constituted a clear and present danger to the administration of justice. The judgment of contempt will, therefore, be reversed and the rule dismissed.

*Reversed and dismissed.*