COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


JAMES C. HENDERSON
                                                    MEMORANDUM OPINION* BY
v.        Record No. 2383-09-1                      JUDGE SAM W. COLEMAN III
                                                         NOVEMBER 16, 2010
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                             Norman A. Thomas, Judge

           Caswell W. Richardson (Robert H. Knight, III, Assistant Public
           Defender, on brief), for appellant.

           Virginia B. Theisen, Senior Assistant Attorney General (Kenneth T.
           Cuccinelli, II, Attorney General, on brief), for appellee.


       James C. Henderson (appellant) appeals from his bench trial misdemeanor conviction for

contempt in that he (1) obstructed or interrupted the administration of justice and (2) was

disobedient or resistant to lawful process of the court.  On appeal, he contends the evidence was

insufficient to prove he was in contempt of court on either theory.[1]  We conclude that the

evidence was insufficient to prove that appellant was in contempt based on either ground.

Therefore, we reverse his conviction and dismiss the show cause summons and bench warrant.

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The bench warrant indicates appellant was charged with contempt under the common
law and Code § 18.2-456.  However, Code § 18.2-456(1) and (5) proscribe two types of
contemptuous conduct that can only be "punish[ed] . . . *summarily*" when committed in the
presence of the court.  (Emphasis added.); see also Robinson v. Commonwealth, 41 Va. App.
137, 146, 583 S.E.2d 60, 64 (2003).  Here, the parties concede the alleged contempt was not in
the presence of the court and, therefore, was being treated as indirect contempt.  See In re Oliver,
333 U.S. 257, 275-76 (1948) (distinguishing indirect contempt from summary contempt, the
latter requiring the contempt to be "actually observed by the court" and "immediate[ly]
punish[ed]").  Nevertheless, we determine whether the conduct was sufficient to violate the
substantive provisions of the statutory subsections (1) or (5).

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence proved that appellant received a jury summons ordering him "to report to the Jury Assembly Room promptly at 9:00 a.m. on each Tuesday of the month of July 2009." The summons stated that "[o]nly the jury commissioners have the power to excuse persons selected as jurors[,]" and directed Henderson to "write a letter to the jury commissioners . . . stating the reasons for [any] requests in detail" if he wished to be excused from jury duty.

On June 2, 2009, appellant entered the Norfolk Courthouse. A deputy at the security desk referred appellant to Anne Davis, the jury administrator, concerning his questions about his objection to and unwillingness to serve and abide by the jury summons. Davis attempted to explain how the procedure worked, but appellant began yelling and gesturing with his hands and accusing people of lying to him. Appellant continually told Davis he did not want to and did not intend to serve on a jury, offering her various reasons. Davis described appellant's behavior as "very loud and very obnoxious." Appellant's voice "echoed down the hallway" of the courthouse, and Davis speculated "everybody who was standing there could hear it." However, the record does not indicate that any judicial proceedings were being conducted in any of the courtrooms, judge's chambers or facilities near or on the hallway where appellant confronted Davis.

Davis tried to explain that she had no authority to excuse anyone from jury duty. However, during the encounter, appellant continued to yell at her and insisted upon seeing a judge. Davis saw Sandra Claxton staring at them in the hallway and asked her to help.

Claxton is "the supervisor for the judges' office in Norfolk Circuit Court" and heard appellant yelling at Davis in the courthouse while she tried to calm him. Davis eventually brought appellant to Claxton's office and asked her to speak with him. Claxton spoke with appellant and attempted to calm him. "His arms were flailing . . . [and] thrashing around," he was agitated, and he initially spoke loudly to Claxton. "After a couple of minutes," appellant lowered his voice, at which time Claxton explained that he could write a letter to the jury commissioners to request that he be excused from service. Appellant responded he was not going to write a letter. Claxton read from a form that described how appellant could contact the jury commissioners, wrote appellant's name and number on the form, photocopied the form for appellant, and told him she would pass on his information to the supervising judge.

Appellant moved to strike the evidence, arguing he did not intend to obstruct the administration of justice by intimidating either Davis or Claxton. Appellant further contended that because he was never called for jury duty, he never disobeyed or resisted the process of the court. Although conceding he "was loud," appellant averred he was simply seeking assistance in filling out the necessary paperwork to excuse himself from the jury.

The trial court discounted appellant's recitation of the events and found him "guilty of contempt of court on each of the two alternate grounds cited." [2] The trial court explained that appellant's physical proximity to Davis and Claxton and the "extreme nature of [his] conduct" constituted an obstruction of the administration of justice because appellant intended to

---

[2] The trial court did not explicitly state whether it was finding appellant guilty of contempt under the common law or Code § 18.2-456. However, it is clear appellant was brought before the court in a full plenary hearing because a show cause was issued for appellant, and the parties were allowed to call witnesses to testify. See Scialdone v. Commonwealth, 279 Va. 422, 444, 689 S.E.2d 716, 728 (2010) (granting the accused due process in an indirect contempt proceeding, including "'the assistance of counsel . . . and the right to call witnesses'" (quoting Cooke v. United States, 267 U.S. 517, 537 (1925))); Davis v. Commonwealth, 219 Va. 395, 398, 247 S.E.2d 681, 682 (1978).

intimidate Davis and Claxton "in [their] official capacit[ies] as working with the administration of the jury office," and "assisting judges . . . in the administration of justice." The trial court further held that appellant unequivocally stated his intent to disobey the jury summons and thus resisted lawful process.

Appellant timely noted this appeal.

ANALYSIS

Appellant argues the evidence was insufficient to find him in contempt of court under the substantive provisions of Code § 18.2-456(1) or (5). Specifically appellant avers his conduct did not constitute "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice" under Code § 18.2-456(1), or "[d]isobeyance or resistance of an officer of the court, juror, witness or other person to any lawful process, judgment, decree or order of the court" under Code § 18.2-456(5).[3]

A. Code § 18.2-456(1): Misbehavior in Presence of the Court

"'Contempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute.'" Carter v. Commonwealth, 2 Va. App. 392, 396, 345 S.E.2d 5, 7 (1986) (quoting 4A Michie's Jurisprudence Contempt § 2 (Repl.Vol. 1983)). "Any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice is contempt." Potts v. Commonwealth, 184 Va. 855, 859, 36 S.E.2d 529, 530 (1946).

---

[3] Code § 18.2-456(1) and (5) have codified two types of misconduct recognized at common law that may be summarily punished as contemptuous. A trial court retains the common law authority to employ plenary procedures even for contempt that, by statute, may be punished summarily. See Robinson, 41 Va. App. at 145-46, 583 S.E.2d at 64. Although this was not a summary contempt proceeding, the parties concede that contempt as proscribed by those statutory subsections are at issue here.

"[O]nly '[t]he least possible power adequate to the end proposed' should be used in contempt cases." United States v. Wilson, 421 U.S. 309, 319 (1975). "Trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice," only the latter of which they may properly punish as contempt. Brown v. United States, 356 U.S. 148, 153 (1958). Thus, inappropriate or ill-mannered conduct that does not "obstruct or interrupt the administration of justice" or constitute "disobedience or resistance . . . to any lawful process" is not contempt.

Furthermore, the record must contain evidence of the conduct that is the basis for the finding. "The record in such cases must contain more than the bare *conclusion* that the defendant's conduct was insolent, insulting, boisterous or the like. The actual facts upon which the court based its final conclusion must be set out. Such *conclusions* alone will not support a criminal contempt adjudication." Carter, 2 Va. App. at 397, 345 S.E.2d at 8. Because contempt "is a proceeding 'to preserve the power and vindicate the dignity of the court,' it is criminal and punitive in character, and the guilt of the alleged contemner must be established beyond a reasonable doubt." Weston v. Commonwealth, 195 Va. 175, 184, 77 S.E.2d 405, 410 (1953) (quoting Local 333B, United Marine Div. of Int'l Longshoremen's Ass'n v. Commonwealth, 193 Va. 773, 779, 71 S.E.2d 159, 163 (1952)).

Common law contempt as incorporated in Code § 18.2-456(1) criminalizes "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice." Obstruction requires an "act that will interrupt the orderly process of the administration of justice, or thwart the judicial process." United States v. Warlick, 742 F.2d 113, 116 (4th Cir. 1984) (defining the term obstruction under 18 U.S.C. § 401(1), which mirrors Code § 18.2-456(1)). The obstruction can be shown by establishing that the defendant's acts delayed the proceedings, made more work for the judge, induced error or imposed unnecessary

- 5 -

costs on the other parties. <u>American Airlines, Inc. v. Allied Pilots Ass'n</u>, 968 F.2d 523, 532 (5th Cir. 1992) (interpreting the same). It is not sufficient that the person's countenance was threatening or that he was loud and overbearing. <u>See</u> <u>In re McConnell</u>, 370 U.S. 230, 234 (1962) (requiring "an actual obstruction of justice" before invoking "the drastic procedures of the summary contempt power"); <u>see also</u> <u>Salyer v. Commonwealth</u>, 209 Va. 662, 664, 166 S.E.2d 110, 111-12 (1969) (holding that the evidence must prove "a clear and present danger to the administration of justice").

In <u>Epps v. Commonwealth</u>, 47 Va. App. 687, 718, 626 S.E.2d 912, 926 (2006), a circuit judge directed the clerk to post an order on the front door of each courthouse to "advise the public of how they could access the courthouse when the courthouse was locked." This Court held that "by removing the sign and order, the public was denied access to the courthouse, including the inability to schedule cases with the court administrator." <u>Id.</u> Appellant's deliberate removal of the order therefore obstructed the administration of justice.

By comparison, no obstruction to the administration of justice occurred in this case. Although the evidence was sufficient to prove appellant was loud and rude, it is not clear that his conduct constituted contempt under the statute. The evidence did not show how in any way he obstructed or interrupted the administration of justice. Davis was the jury administrator; therefore, her job duties involved assisting and working with citizens summoned to serve as prospective jurors. When Davis was unable to explain to appellant that she could not excuse him at that time, she had Claxton speak with him. Claxton calmed appellant, provided him with a form, told him she would pass along his information to the judge, after which appellant left. Neither Davis nor Claxton specified how appellant's behavior obstructed the administration of justice. Instead, the record shows that Davis and Claxton performed their respective jobs addressing appellant's concerns. No evidence showed that any court proceedings were

interrupted or delayed because of appellant's conduct, or that any judicial officer was prevented from performing his or her administrative duties; to the contrary Davis and Claxton performed their duties admirably in dealing with a difficult and recalcitrant juror. At most, appellant's conduct constituted loud, disrespectful, and unruly conduct directed at and in the presence of nonjudicial employees charged with the administration of justice. Even as to these employees the evidence did not show that appellant obstructed them in the administration of their offices. Accordingly, the evidence is insufficient to sustain a finding of contempt under Code § 18.2-456(1).

B. Code § 18.2-456(5): Resistance to Lawful Process

Common law contempt as incorporated in Code § 18.2-456(5) defines contempt as "disobedience or resistance of an officer of the court . . . to any lawful process, judgment, decree or order of the court." The elements for finding the accused in contempt for resisting lawful process are: "(1) issuance of 'lawful process,' (2) valid service of the process by one of the modes prescribed by law, (3) timely knowledge of the process by the person upon whom service is sought, where service was not personal, and (4) willful disobedience of the process." Bellis v. Commonwealth, 241 Va. 257, 262, 402 S.E.2d 211, 214 (1991).

Appellant argues that resisting lawful process was impossible because he was never called for jury service. In other words, appellant characterizes the "lawful process" as actually being required to appear for jury duty. The Commonwealth counters that appellant was summoned to appear on every Tuesday in July and he stated to Davis and Claxton the he would not do so. He further told them that he would not follow the instructions or procedure of writing a letter to explain why he should be excused from jury service. The Commonwealth asserts that appellant's behavior evinced an intent to resist that portion of the jury summons. We disagree

- 7 -

with the Commonwealth because the record contains no evidence that appellant failed to appear on any date that he was summoned or required to report for jury duty.

"Before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied." Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977).  If the actions of the alleged contemnor do not violate a clearly defined duty imposed upon him, those actions do not constitute contempt. Michaels v. Commonwealth, 32 Va. App. 601, 609, 529 S.E.2d 822, 826 (2000).  The order or decree need not be formal so long as it was issued by the court and the directives are clear. Cf. Epps, 47 Va. App. at 719-20, 626 S.E.2d at 927 (finding the defendant to be in contempt where he refused to return an order he had removed from outside the courthouse upon a circuit judge's personal request).

Here, the jury summons required appellant "to report to the Jury Assembly Room promptly at 9:00 a.m. on each Tuesday of the month of July 2009."  The record contains no evidence that appellant failed to appear on the specified dates or times in July or other dates that he may have been directed to report.  The evidence of appellant's conduct concerns only his appearance at the Norfolk Courthouse on June 2.  Neither Davis nor Claxton nor a jury officer testified that appellant failed to report on any Tuesday in July as required by the summons or on any other date that he was required to report.  Although appellant stated his intention not to obey the summons, we do not know from the facts before us whether appellant *actually* disobeyed the summons.  We will not infer or speculate from appellant's stated intention that he, in fact, failed to report as required when the record does not substantiate such an inference. See Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984) (requiring the circumstantial evidence to "form an unbroken chain which links the defendant to the crime beyond a reasonable doubt").

At most, appellant expressed his intention to disobey the jury summons sometime in the future; the record does not establish whether he actually did so. Appellant was not scheduled to appear for jury duty until the following month; therefore, his stated intention that he would not appear in the future did not prove he resisted lawful process. We therefore have no basis to conclude appellant was in contempt by disobeying or resisting a lawful process.

## CONCLUSION

The evidence is insufficient to support a finding that appellant obstructed or interrupted the administration of justice or was disobedient or resistant to lawful process of the court. Accordingly, we reverse appellant's conviction and dismiss the case.

Reversed and dismissed.