UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, White and Senior Judge Annunziata
Argued at Fairfax, Virginia


UMID KHIKMATOV

                                  MEMORANDUM OPINION[*] BY
v.      Record No. 1616-24-4        JUDGE MARY BENNETT MALVEAUX
                                     NOVEMBER 12, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Richard E. Gardiner, Judge[1]

Jessica E. McCollum (McCollum Legal, PLLC, on briefs), for
appellant.

Katherine Quinlan Adelfio, Senior Assistant Attorney General (Jason
S. Miyares, Attorney General, on brief), for appellee.


The circuit court summarily found Umid Khikmatov ("appellant") in criminal contempt,

in violation of Code § 18.2-456(A)(1). On appeal, appellant contends that the circuit court erred

in depriving him of his due process right to a plenary proceeding because his allegedly

contemptuous conduct did not occur in the court's presence. For the following reasons, we

reverse and remand for further proceedings consistent with this opinion.

I. BACKGROUND

"We recite the facts in the light most favorable to the Commonwealth, the prevailing

party below." *Johnson v. Commonwealth*, 85 Va. App. 257, 266 (2025) (quoting *Camann v.*

*Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc)). In doing so, we discard any evidence

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge David Bernhard briefly participated in this case in the circuit court. Subsequently
elected to this Court, Judge Bernhard did not participate in the consideration or resolution of this
appeal.

that conflicts with the Commonwealth's evidence and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Id.*

Beginning in 2022, appellant and the mother of his children litigated child custody and support issues in the circuit court.[2] As part of the proceedings, the circuit court ordered appellant to pay a portion of mother's attorney fees. Fifteen months later, the circuit court found appellant in civil contempt for failure to pay the outstanding balance of those fees. It also set a date for a review hearing at which it would determine whether appellant had paid the remaining balance. At the hearing, appellant stated that he had initiated a withdrawal from his thrift savings plan and would pay the remaining attorney fees as soon as he received the withdrawn funds. The circuit court continued the matter for another review hearing.

At that hearing on August 23, 2024, mother was represented by counsel and appellant appeared pro se. Mother's counsel noted that four weeks had passed since appellant initiated the withdrawal from his thrift savings plan and that he still owed more than $27,000 on his obligation. Ruling from the bench, the circuit court ordered appellant to "pay any attorney's fees for today" and continued the matter for one week, with instructions to appellant to "get the full amount paid off by [then]." It also asked mother's counsel to prepare an order memorializing its rulings. Mother's counsel stated that she had "a proposed one" and that she would "scratch it up and we'll sign it." After handwriting some information into the partially preprinted order, mother's counsel signed the order and handed it to appellant. Appellant borrowed a pen from mother's counsel so that he could

---

[2] The record in this case was sealed, but resolution of issues raised in this appeal necessitates unsealing certain relevant portions of the record. "Accordingly, '[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed.'" *Williams v. Panter*, 83 Va. App. 520, 527 n.1 (2025) (alteration in original) (quoting *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017)).

sign the order, and the order was then retrieved by the bailiff. The circuit court entered the order that same day.

When mother's counsel received her copy of the entered order from the circuit court, she noted that a paragraph in the order had been "scratched out." That paragraph stated that it was "ORDERED that [appellant] shall pay [mother's attorneys] the sum of all costs and attorney's fees incurred by [mother] for this enforcement action through August 23, 2024, such fees to be paid by August 30, 2024, as attached as Exhibit A." Mother's counsel notified the circuit court judge's chambers of the "redaction" on the next business day, August 26, 2024.

At the outset of the previously scheduled hearing on August 30, 2024, the circuit court stated that "before we get to" the attorney fees issue it would address "a different question." Informing the parties that it had "review[ed] the order from last week," it noted that "[p]art of the order was -- somebody drew a line through it." The circuit court first asked mother's counsel, "Did you do that?" Mother's counsel denied altering the order and recounted her actions and observations during the previous hearing: she had prepared and signed the order; handed it to appellant, who borrowed her pen; and then the order was retrieved by the bailiff. Mother's counsel stated her belief that appellant "scratched out that paragraph" while he was signing the order.

The circuit court then asked appellant if he "want[ed] to say anything about the crossing out of the attorney's fees part" and instructed mother's counsel to show appellant her copy of the order. Appellant acknowledged that he had "deleted it" based on his "understanding [that] the case was continued and then the decision on attorney's fees was also continued." Upon hearing this, the circuit court asked appellant, "Did I tell you -- did I direct you, sir, to cross that out?" and appellant replied that "there were a lot of crossings in this order." Again, the circuit court asked, "Did I direct you to cross out those four lines?" Appellant responded, "No, Your Honor, but you reviewed [the order] and you signed it."

After argument on the attorney fees issue, the circuit court found appellant in criminal contempt and sentenced him to three days in jail. The circuit court noted that it was acting pursuant to Code § 18.2-456(A)(1) after finding that appellant "changing an order without the [c]ourt's direction, and without the agreement of counsel, is misbehavior in the presence of the [c]ourt." When appellant argued that the circuit court had "reviewed the final order and . . . signed it after [him]," the court replied, "I did not authorize you to change the order. . . . You admitted that you changed [it]. . . . You didn't have the authority -- I didn't realize that you had changed it. I found that out because counsel" informed the court. The circuit court entered an order memorializing its finding of criminal contempt "for changing a proposed order in the courtroom without opposing counsel's knowledge or consent before the court entered it. Code § 18.2-456(A)(1)."

This appeal followed.

## II. ANALYSIS

Appellant argues that his allegedly contemptuous conduct did not occur in the circuit court's presence, and therefore the court erred by depriving him of his due process rights when it conducted a summary contempt proceeding.

"It has long been established that Virginia courts possess an 'inherent power' to punish for contempt. This inherent authority not only ensures compliance with court orders but also upholds public confidence and respect for the judiciary, both of which are essential to protecting and enforcing the [people's] rights." *Orndoff v. Commonwealth*, ___ Va. ___, ___ (Sept. 25, 2025) (citation omitted); *see also Carter v. Commonwealth*, 96 Va. 791, 816 (1899) (noting that "in the courts . . . there is an inherent power of self-defence and self-preservation" that "is a power necessarily resident in and to be exercised by the court itself"); *Commonwealth v. Dandridge*, 4 Va. (2 Va. Cas.) 408, 416 (1824) (upholding contempt finding and describing contempt "as 'demonstrating a gross want of that regard and respect, which when once Courts of

Justice are deprived of[,] their authority . . . is entirely lost among the people'" (quoting 4 William Blackstone, *Commentaries on the Laws of England* 286 (1769))). A court's contempt power therefore functions "to 'preserve the power of the court and to vindicate the court's dignity.'" *Bell v. Commonwealth*, 81 Va. App. 616, 624 (2024) (quoting *Gilman v. Commonwealth*, 275 Va. 222, 227 (2008)), *petition refused*, No. 240866 (Va. Apr. 11, 2025). "[T]he power may be regulated by legislative enactment, provided it is not 'destroyed, or so far diminished as to be rendered ineffectual.'" *Reid v. Reid*, 245 Va. 409, 414 (1993) (quoting *Carter*, 96 Va. at 816); *see also* Code § 18.2-456 (providing courts with statutory authority to summarily punish certain contemptuous acts). "[W]e review the exercise of a court's contempt power under an abuse of discretion standard." *Orndoff*, ___ Va. at ___ (alteration in original) (quoting *Petrosinelli v. People for the Ethical Treatment of Animals, Inc.*, 273 Va. 700, 706 (2007)). "'[B]y definition,' . . . a trial court 'abuses its discretion when it makes an error of law.'" *Curry v. Commonwealth*, 84 Va. App. 339, 349 (2025) (first alteration in original) (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017)).

"Although the 'power of the court to punish is the same,' there are two distinct types of contempt, direct and indirect." *Orndoff*, ___ Va. at ___ (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 442 (2010)). "Direct contempt occurs when the contemptible conduct 'is committed in the presence of the court.'"[3] *Id.* at ___ (quoting *Scialdone*, 279 Va. at 442). "Because the misconduct transpires in open court and is readily observable by the judge, 'the court is competent . . . to proceed upon its own knowledge of the facts.'" *Id.* at ___ (alteration in original) (quoting *Scialdone*, 279 Va. at 443); *see also Bell*, 81 Va. App. at 625 (noting that "in a direct contempt, 'the judge is his own best witness of what occurred'" (quoting *Scialdone*, 279

---

[3] Conversely, "indirect contempt 'occur[s] outside the presence of the court.'" *Bell*, 81 Va. App. at 625 (alteration in original) (quoting *Gilman*, 275 Va. at 227).

Va. at 444)). Therefore, in cases of direct contempt, the court may "punish the offender without further proof, and without issue or trial in any form." *Orndoff*, ___ Va. at ___ (quoting *Scialdone*, 279 Va. at 443). "In light of this procedure, direct contempt is also known as summary contempt." *Id.* at ___. "Summary contempt is reserved for 'exceptional circumstances . . . such as acts threatening the judge or disrupting a hearing or obstructing court proceedings.'" *Id.* at ___ (alteration in original) (quoting *Vaughn v. City of Flint*, 752 F.2d 1160, 1167 (6th Cir. 1985)); *see also* Code § 18.2-456(A) (permitting punishment for summary contempt in limited circumstances, including "[m]isbehavior in the presence of the court," "[v]iolence, or threats of violence, to a judge," and "[v]ile, contemptuous, or insulting language . . . or like language used in [a judge's] presence"). "The exercise of the summary contempt power 'is a delicate one and care is needed to avoid arbitrary or oppressive conclusions.'" *Orndoff*, ___ Va. at ___ (quoting *Scialdone*, 279 Va. at 442). And "[b]ecause summary contempt 'is a proceeding "to preserve the power and vindicate the dignity of the court," it is criminal and punitive in character, and the guilt of the alleged contemnor must be established beyond a reasonable doubt.'" *Id.* at ___ (quoting *Weston v. Commonwealth*, 195 Va. 175, 184 (1953)).

Although summary contempt is criminal in nature, "a 'narrow exception' to due process requirements is carved out for summary contempt." *Id.* at ___. This exception is limited to "charges of misconduct, in open court, in the presence of the judge," which conduct "disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential" to preserve the court's authority in the eyes of the public. *Id.* at ___ (quoting *Scialdone*, 279 Va. at 443). Consequently, "'[i]f some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these

essential elements,' the case is not appropriate for summary contempt." *Id.* at ___ (quoting *In re Oliver*, 333 U.S. 257, 275 (1948)).  By contrast, in cases of indirect contempt, which involve conduct "'of which the court cannot have so perfect a knowledge,' courts must provide the full panoply of constitutional rights: notice of the charge, right to counsel, presumption of innocence, as well as the opportunity to present evidence and to cross-examine adverse witnesses." *Parham v. Commonwealth*, 60 Va. App. 450, 458 (2012) (citation omitted) (quoting 4 Blackstone, *supra*, at 286).  Accordingly, when a judge lacks "personal knowledge [of the misbehavior], and is informed thereof only by confession of the party, or by testimony under oath of others, the proper practice is, by rule or other process, to require the offender to appear and show cause why he should not be punished." *Scialdone*, 279 Va. at 444 (alteration in original) (quoting *Cooke v. United States*, 267 U.S. 517, 535 (1925)).

Before inquiring into the nature of appellant's conduct—i.e., whether it occurred in the circuit court's presence and therefore was suitable for summary contempt proceedings—we first note that appellant did not preserve his argument for appellate review.  Rule 5A:18 of this Court requires a "contemporaneous objection . . . to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Flowers v. Commonwealth*, 84 Va. App. 143, 157-58 (2025) (quoting *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023)); *see also* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.").  "This rule 'applies to bar even constitutional claims.'" *Flowers*, 84 Va. App. at 157 (quoting *Clark*, 78 Va. App. at 767).  Here, appellant did not object or argue to the circuit court that it could not summarily find him in contempt and that his due process rights required a plenary proceeding.  Accordingly, he failed to preserve for appellate review the issue he now raises in this Court.  But appellant asks this

Court to consider his argument under Rule 5A:18's "ends of justice" exception. "'The ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred." *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022)). "[A]n inquiry preceding [the exception's] application involves two questions: '(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'" *Bell*, 81 Va. App. at 628 (quoting *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Cornell*, 76 Va. App. at 31 (quoting *Conley*, 74 Va. App. at 683).

Our first inquiry—whether the circuit court erred as contended by appellant—requires us to consider whether appellant's alteration of the order, made without the court's authorization or awareness, occurred in the court's "presence" and therefore permitted a summary contempt proceeding. We conclude that it did not.

Here, the circuit court summarily convicted appellant of criminal contempt pursuant to Code § 18.2-456(A)(1), which authorizes a court to "punish . . . summarily" "[m]isbehavior in the presence of the court."[4] The circuit court based its conviction on its finding that appellant had "chang[ed] an order without the [c]ourt's direction, and without the agreement of counsel," which it deemed "misbehavior in the presence of the [c]ourt." But the circuit court acknowledged that it had been unaware of appellant's conduct in altering the order. It stated that

---

[4] The statute also authorizes a summary criminal contempt conviction for "[m]isbehavior . . . near thereto [the presence of the court]." Code § 18.2-456(A)(1). But that provision is not relevant here, where the circuit court convicted appellant under the statute's "in the presence of the court" provision, specifically ruling from the bench that appellant changed the order "in the presence of the [c]ourt" and reiterating in its contempt order that appellant made the change "in the courtroom . . . before the court entered [the order]."

it "didn't realize that [appellant] had changed it" and only "found that out because [mother's] counsel" informed the court of the change. The circuit court also had to make inquiries of the parties to determine what, exactly, had transpired and who was responsible for the order's alteration. It first asked mother's counsel "Did you do that?" and, when mother's counsel denied changing the order, it then asked appellant about the alteration. When appellant acknowledged making the deletion, the circuit court twice asked appellant whether the court had directed him to make the changes. Based on these facts, we conclude that appellant's conduct in altering the order was not "actually observed by the court" or "personally observed by the judge." *Orndoff*, ___ Va. at ___ (first quoting *Scialdone*, 279 Va. at 443; and then quoting *In re Oliver*, 333 U.S. at 275). Further, because the circuit court lacked such contemporaneous observation of "the essential elements of [appellant's] offense," it had to "depend upon statements made by others for [its] knowledge about these essential elements." *Id.* at ___ (quoting *In re Oliver*, 333 U.S. at 275). Because the circuit court therefore lacked "personal knowledge [of the misbehavior]," *Scialdone*, 279 Va. at 444 (alteration in original) (quoting *Cooke*, 267 U.S. at 535), we cannot say that appellant's conduct occurred in the presence of the court, and therefore the "case [was] not appropriate for summary contempt," *Orndoff*, ___ Va. at ___. The circuit court therefore abused its discretion when it conducted summary contempt proceedings rather than "provid[ing] the full panoply of constitutional rights" to appellant in a plenary proceeding, as required in cases of indirect contempt. *Parham*, 60 Va. App. at 458.

Having found error by the circuit court as alleged by appellant, we return to the second prong of our ends of justice inquiry and ask whether "the failure to apply the ends of justice provision [here] would result in a grave injustice." *Cornell*, 76 Va. App. at 30 (quoting *Williams v. Commonwealth*, 294 Va. 25, 27-28 (2017)). We conclude that it would. As this Court

- 9 -

recently held in *Bell*,[5] finding a litigant in summary contempt "in derogation of [the litigant's] basic due process guarantee" of a plenary contempt proceeding "constitutes a miscarriage of justice to which the ends of justice exception provided in Rule 5A:18 applies." 81 Va. App. at 631. Consequently, Rule 5A:18 does not bar this appeal from resolution on the merits.[6]

### III. CONCLUSION

Having applied Rule 5A:18's "ends of justice" exception, and having found that the circuit court erred in conducting a summary contempt proceeding that deprived appellant of his due process rights, we reverse the circuit court's judgment summarily holding appellant in criminal contempt. The case is therefore remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[5] The Commonwealth acknowledges on brief that if appellant's "conduct was indirect contempt and he was entitled to notice and a fair hearing, *Bell* . . . controls this case." But the Commonwealth also "respectfully maintains that *Bell* was wrongly decided and that the ends of justice exception to Rule 5A:18 does not apply" where, as here, a defendant does not object to a summary indirect contempt proceeding. The interpanel-accord doctrine precludes our consideration of the Commonwealth's challenge to *Bell*, *see, e.g.*, *Laney v. Commonwealth*, 76 Va. App. 155, 163-64 (2022) (discussing operation of the doctrine), but we note the Commonwealth's preservation of this issue for further appeal.

[6] Because we hold that the circuit court erred in conducting a summary contempt proceeding, rather than affording appellant the due process, trial-like protections of a plenary proceeding, we need not address appellant's second assignment of error challenging the sufficiency of the evidence to convict him under Code § 18.2-456(A)(1).