# Richmond.

## FRENCH AND OTHERS V. CHAPIN-SACKS MANUFACTURING CO., INC.

November 11, 1915.

Absent, Keith, P.

1. NUISANCE—*Burden of Proof—Case in Judgment.*—On a bill filed to enjoin a nuisance, the burden is upon the complainant to make out his case by a preponderance of the evidence, which burden has not been sustained by the complainant in the case in judgment.

2. APPEAL AND ERROR—*Injunctions—Code, Sections 3454 and 3338a.*—The right of appeal given by section 3454 of the Code from a final decree, or from a decree adjudicating the principles of a cause, is the same in a case for equitable relief by injunction as in other equity cases, and this right is not taken away by section 3338a of volume 3, Pollard's Code.

Appeal from a decree of the Circuit Court of Shenandoah county. Decree for the defendant. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Tavenner & Bauserman,* for the appellants.

*F. H. Brumbach,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

In February, 1913, appellants (who are lower riparian proprietors of lands on a small creek known as "Elk Run," near the town of Woodstock, Shenandoah county, Virginia) filed their bill in equity in the circuit court for an injunction against appellees on the following allegations: That the farm of G.

Mark French and E. Florence French comprises 133 acres of land, and extends to the corporate limits of Woodstock; that their dwelling house and lot, used in connection therewith, is located in the town immediately across the street from the land; that 100 acres of the farm is in permanent pasture and the residue in forest; that for many years the farm, almost exclusively, has been used for stock raising, and pasturing the cattle of the owners and others, during the summer months, carrying in pasture as many as fifty head of stock, including cows and horses, at profitable prices; that "Elk Run" flows through this farm for one-half a mile, and until the commission of the grievances complained of furnished an abundant supply of drinking water for the cattle and other stock; that appellant, W. S. French, owns a tract of seven acres adjoining the 133 acre tract, through which "Elk Run" also flows, and within forty feet of his dwelling; that for many years the waters of the creek had been used by the family for domestic purposes; that there are located on this tract a steam flour and feed mill and ice plant (the latter, however, not in operation); that prior to the matters complained of fish in considerable numbers, during the spawning season, frequented this stream, coming up from Shenandoah river, and the increase contributed to the stocking of that river with fish. The bill furthermore charges, that in the fall of 1910 appellees acquired a lot located above appellants' property on "Elk Run," and constructed thereon an ice plant, with a daily manufacturing capacity of ten tons of ice, and also establised on the lot a large milk condenser, pasteurizing apparatus, etc.; that the following year they began purchasing and condensing large quantities of milk, and manufacturing for sale, at retail and wholesale, ice cream and other milk products, both for nearby and distant markets; that the owners, in addition to other operations, installed a system of daily milk deliveries, and continuously, with large motor trucks, hauled milk for miles from the surrounding territory;

that waste material of grease, oil and other products from the factories, and boiling water in large quantities were daily emptied into the creek; also, that large numbers. of milk cans, holders and freezers were washed with soap, caustic soda, red-seal-lye and steam, and those washings, together with waste of sour milk, cream and other refuse and noxious substances, were poured through a "cimmer" leading from the factory into the creek; that these refuse substances discolor the water, and the decomposing waste products, oils and chemicals are carried down the stream and deposited along the bottom and sides, giving off disagreeable and sickening odors affecting the health of W. S. French and his family and the comfort of his home; that the waters of the creek have become so polluted as to be unfit for domestic use, and cattle and horses, both in winter and summer, refuse to drink it; that since the spring of 1911, numbers of fish have been killed, and all have disappeared from the stream; and that the acts complained of constitute a nuisance, against the continuance of which the bill prays for a permanent injunction.

Defendant answered denying that its business was in any sense a nuisance, or polluted the waters of the stream, but on the contrary that it was a great benefit to the community at large. In short, it controverted all material allegations of the bill, and showed that the alleged contamination of the creek might reasonably be traced to the fact that the waste matter and sewage from the town of Woodstock drained into it.

At the November term, 1914, the court heard the case on the pleadings and evidence and made the following findings of fact:

"1.   That the defendant does discharge into the stream or little run which passes through the premises of the complainants about 75,000 gallons of water drawn from a well.

"2.   That during certain hours of the day the water so discharged is discolored by milk, but which does not contain any deleterious substances.

"3. That near the plant the temperature of the water is perceptibly affected, but before it reaches the complainant's premises the temperature becomes near that of the air.

"4. That no odor arising from the stream is proven to be due to any matter discharged into it by the defendant company, but is abundantly accounted for from other sources.

"5. All the conditions complained of by complainants are intensified by the dam or obstructions placed or permitted in said run immediately in front of the house on the premises by complainants, and could readily be removed by piping so far as the house is concerned, but to which piping by the defendant the complainants will not consent.

"6. An unnecessary amount of oil is permitted by defendant to escape from its plant into the run, which by proper safeguards can be prevented. In regard to the oil the court gives the defendant until the first day of the next term to correct the arrangements in the plant for its disposition.

"The evidence discloses no reason why cattle or horses or other animals should not use the water, even during the hours of the day when the milk washed from the cans is flowing through the run, unless the oil should be distasteful to them, because of anything the defendant discharges into it.

"The evidence also discloses that, except for a short distance above the creamery, the so-called run is a wet-weather drain, and that all the other drains permeating the town converge before reaching the complainant's premises, or on the same, and it is probable that the run passing through the complainant's property does emit odors and become foul, but the evidence does not disclose any reason for the discharge from the creamery having any such effect."

The injunction prayed for was, therefore, refused, except with respect to the discharge of oil into the run, action in regard to which was suspended until the next term to give the defendant opportunity to correct it.

The evidence is voluminous and highly conflicting. Nevertheless, bearing in mind the rule that the burden rests upon complainants to establish the allegations of their bill by a preponderance of the evidence, we feel constrained to concur in the trial court's findings of fact.

Counsel for appellee insisted that the decree was not appealable, resting his contention on section 3338-a, 3 Pollard's Code, p. 450. That section provides that, "When a circuit or corporation court, or a judge thereof, shall refuse to award an injunction or having awarded a temporary injunction, dissolves or refuses to enlarge the same, a copy of the proceedings in court, and the original papers presented to the judge in vacation, with any orders entered in the proceedings, may be presented to a judge of the Court of Appeals, who may thereupon either award an injunction, or reinstate the injunction dissolved, or enlarge the injunction."

There is nothing in the language of section 3338-a to warrant the construction contended for. On the contrary, it was plainly not the purpose of the legislature, by implication, to engraft such an amendment on the general statute providing for appeals, writs of error and *supersedeas* found in section 3454. The right of appeal from a final decree, or from a decree adjudicating the principles of the cause, is the same in a case for equitable relief by injunction as in other equity cases.

We find no error in the decree appealed from, and it must be affirmed.

*Affirmed.*