COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges AtLee, Fulton and Raphael
Argued at Norfolk, Virginia


PAUL A. GALIOTOS, INDIVIDUALLY AND
  AS TRUSTEE OF THE ANTHONY GALIOTOS
  TRUST AND TRUSTEE OF THE IRENE A.
  GALIOTOS TRUST

v.        Record No. 1045-24-1

TASOS A. GALIOTOS, INDIVIDUALLY AS
  BENEFICIARY OF THE WILL OF
  IRENE A. GALIOTOS AND AS TRUSTEE
  AND BENEFICIARY OF THE ANTHONY S.
  GALIOTOS TRUST AND TRUSTEE OF THE
  IRENE A. GALIOTOS TRUST, ET AL.


PAUL A. GALIOTOS, INDIVIDUALLY AND
  AS TRUSTEE OF THE ANTHONY GALIOTOS
  TRUST AND TRUSTEE OF THE IRENE A.
  GALIOTOS TRUST

                                                            OPINION BY
v.        Record No. 1661-24-1              JUDGE STUART A. RAPHAEL
                                                          OCTOBER 21, 2025

TASOS A. GALIOTOS, INDIVIDUALLY AS
  BENEFICIARY OF THE WILL OF
  IRENE A. GALIOTOS AND AS TRUSTEE
  AND BENEFICIARY OF THE ANTHONY S.
  GALIOTOS TRUST AND TRUSTEE OF THE
  IRENE A. GALIOTOS TRUST, ET AL.


PAUL A. GALIOTOS, INDIVIDUALLY AND
  AS TRUSTEE OF THE ANTHONY GALIOTOS
  TRUST AND TRUSTEE OF THE IRENE A.
  GALIOTOS TRUST

v.        Record No. 1953-24-1

TASOS A. GALIOTOS, INDIVIDUALLY AS
  BENEFICIARY OF THE WILL OF
  IRENE A. GALIOTOS AND AS TRUSTEE
  AND BENEFICIARY OF THE ANTHONY S.
  GALIOTOS TRUST AND TRUSTEE OF THE
  IRENE A. GALIOTOS TRUST, ET AL.

PAUL A. GALIOTOS, INDIVIDUALLY AND
  AS TRUSTEE OF THE ANTHONY GALIOTOS
  TRUST AND TRUSTEE OF THE IRENE A.
  GALIOTOS TRUST

v.        Record No. 0124-25-1

TASOS A. GALIOTOS, INDIVIDUALLY AS
  BENEFICIARY OF THE WILL OF
  IRENE A. GALIOTOS AND AS TRUSTEE
  AND BENEFICIARY OF THE ANTHONY S.
  GALIOTOS TRUST AND TRUSTEE OF THE
  IRENE A. GALIOTOS TRUST, ET AL.

PAUL A. GALIOTOS, INDIVIDUALLY AND
  AS TRUSTEE OF THE ANTHONY GALIOTOS
  TRUST AND TRUSTEE OF THE IRENE A.
  GALIOTOS TRUST

v.        Record No. 0370-25-1

TASOS A. GALIOTOS, INDIVIDUALLY AS
  BENEFICIARY OF THE WILL OF
  IRENE A. GALIOTOS AND AS TRUSTEE
  AND BENEFICIARY OF THE ANTHONY S.
  GALIOTOS TRUST AND TRUSTEE OF THE
  IRENE A. GALIOTOS TRUST, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Vincent Conway, Jr., Judge Designate

Richard H. Ottinger (Katherine M. Lennon Ellis; Sophie L. Arnold;
Woods Rogers Vandeventer Black PLC, on briefs), for appellant
Paul A. Galiotos, individually and as trustee of the Anthony Galiotos
Trust and as trustee of the Irene Galiotos Trust.

Gary A. Bryant (Willcox & Savage, P.C., on briefs), for appellee
Tasos A. Galiotos, individually as beneficiary of the will of Irene A.
Galiotos and as trustee and beneficiary of the Anthony S. Galiotos
Trust and trustee of the Irene A. Galiotos Trust.

No brief or argument for Stavros P. Galiotos, individually and as
trustee of the Anthony Galiotos Trust and trustee of the Irene A.
Galiotos Trust.

No brief or argument for Stephanie C. Smith, Administrator of the
Estate of Irene A. Galiotos, deceased.

- 2 -

These five appeals arise from a longstanding dispute among three brothers—Stavros ("Steve"), Paul, and Tasos Galiotos—over the division of business assets held in trusts for which the brothers are both co-trustees and equal beneficiaries. In *Galiotos v. Galiotos*, 83 Va. App. 206 (2024) (Nos. 0068-24-1 & 0077-24-1), we affirmed the chancellor's final order that (i) required a pro-rata distribution of each asset and (ii) rejected a proposal by Steve and Paul for a non-pro-rata distribution that the chancellor found unfair to Tasos. To stay execution of the judgment pending appeal, the chancellor required security of $1 million and imposed conditions to protect the parties' interests and the trust assets that Steve and Paul continued to manage as majority co-trustees.

After Steve posted the $1 million security, however, Paul insisted that he was not bound by the stay conditions because he was not asking for the judgment to be stayed as to him. The trial court issued an order to clarify that the stay conditions applied to all three brothers. Paul appeals that ruling, arguing that the trial court lost jurisdiction to extend the stay conditions to him. The trial court subsequently entered four contempt orders against Paul for continuing to disobey the stay conditions. Paul separately appealed each of those contempt orders.

We find appellate jurisdiction lacking in two of the appeals but affirm the judgments in the other three. In doing so, we make clear that Rule 1:1B(a)(3) gives trial courts concurrent jurisdiction with the appellate court to address the conditions for a stay pending appeal. We clarify that Code § 8.01-676.1(E) requires a party aggrieved by a trial court's stay-pending-appeal ruling to seek review of that ruling before the appellate panel hearing the appeal, rather than by filing an independent appeal, as Paul tried to do here. And we clarify the rules for determining when a contempt order is appealable.

- 3 -

BACKGROUND

We set forth the background and history of the brothers' dispute in *Galiotos II*, 83 Va. App. at 217-30.[1] When reviewing the chancellor's rulings at issue in these appeals, "we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Mills v. Mills*, 70 Va. App. 362, 368 (2019). Having prevailed below, Tasos is the beneficiary of that review standard.

Following their mother's death in 2016, the brothers disagreed about how to distribute the trust assets, which consisted of various business interests, properties, and cash. Steve and Paul proposed a non-pro-rata distribution that would begin to separate Tasos from the businesses that Steve and Paul wanted to keep for themselves. Their plan also assigned $901,427 in debt to Tasos's family. Steve and Paul rejected Tasos's demand for a pro-rata distribution of each asset. They also rejected his offer to trade the bucket of assets they assigned to him for one of theirs. *See Galiotos II*, 83 Va. App. at 223-24.

After a three-day trial, the chancellor concluded that Steve and Paul's plan was unfair to Tasos and contrary to the intent of the settlors—their parents. *Id.* at 224-28. The chancellor entered an interlocutory order in July 2022 rejecting their plan and directing that all assets in the trusts be distributed in equal shares pro rata. *Id.* at 229. The chancellor also ordered that the trust debt be paid off before distributing the assets. *Id.* at 229-30.

As the parties litigated other claims and cross-motions for attorney fees, another 17 months passed before the chancellor entered the final order on December 12, 2023. *See id.* at

---

[1] We designate that case "*Galiotos II*" because an earlier reported decision by the Supreme Court affirmed the chancellor's ruling that Steve and Tasos should be removed as co-executors of their mother's estate in light of their inability to get along. *See Galiotos v. Galiotos*, 300 Va. 1, 11 (2021).

- 4 -

230. Anticipating the appeal to come, Tasos asked the court to set the amount of security to suspend execution of the judgment pending appeal, proposing $4 million.

At the hearing on that motion, the chancellor expressed concern about Steve and Paul's continuing to manage the business assets as majority trustees if the pro-rata distribution order were stayed pending appeal:

> THE COURT: I'd like to assume that the self-interest of the majority trustees would make sure that all property was cared for, maintenance decisions were done properly, insurance maintained properly, and that the property not be harmed. But I think the evidence in this case does not allow me to assume that there will be good faith actions on the part of all actors.

So in addition to requiring security, the chancellor said he would impose conditions on a stay pending appeal. The chancellor set the security amount at "$1 million with surety." Steve's counsel asked for and received clarification that "if both Steve and Paul choose to appeal the bond can be split between the two of them."

In an order dated December 12, 2023, the chancellor fixed the required security at $1 million, stating that Steve and Paul "may share in posting the security as they choose provided that the total security . . . is posted." The order also imposed six stay conditions, including that "[d]istributions from the properties or entities controlling the properties subject to appeal are to continue as historically established," expenses greater than $10,000 required "the consent of all trustees," and "[a]ll trustees are to be informed of the location and balance of deposit accounts and notified within 10 business days of the receipt of monthly statements."

On January 11, 2024, Steve and Paul noted separate appeals from the final order. Steve posted a letter of credit for the entire $1 million. Steve's appeal was docketed here as Record No. 0068-24-1; Paul's was docketed as Record No. 0077-24-1.[2]

---

[2] Steve and Paul each posted the required $500 appeal bond for costs.

Less than three months later, Tasos moved to enforce the stay conditions, complaining that Steve and Paul were violating them by (among other things) withholding bank statements, failing to account for the closing of two bank accounts, approving more than $10,000 in expenses without his consent, and failing to pay distributions. Steve responded that he was fully complying with the stay conditions but that Paul was not. Steve explained, "Since January 2024, the bank statements Tasos seeks are solely in Paul's control." Steve insisted that he had "requested repeatedly that Paul cooperate in making distributions. To date, Paul has declined to do so."

For his part, Paul claimed that he was not bound by the stay conditions because he had not filed the posted security. He also argued that Tasos had failed to identify any actual violations of the stay conditions.

At the April 2024 hearing on Tasos's motion, the chancellor said that he had anticipated that Steve and Paul would both be bound by the stay conditions but now realized that only Steve had posted the required security. The chancellor did not think that his December 12, 2023 order as drafted imposed the stay conditions on Paul, only Steve. The chancellor concluded, however, that all three brothers must be bound by the stay conditions to protect the trust assets pending appeal:

> THE COURT: I don't have the power to enter an order requiring . . . people to be mature and businesslike and responsive. I can't do that.
>
> I am unable to find Steve . . . in violation of the conditions, but I do think a new order should be prepared indicating going forward what we talked about today and including both Steve, Tasos, and Paul as far as the requirement to keep each other advised based on information you have.

So the chancellor entered an order dated May 25, 2024, imposing six stay conditions on all three brothers, both individually and in their capacities as co-trustees. The order directed Paul

- 6 -

to provide Steve and Tasos with outstanding financial and K-1 statements.  It also directed Paul to "provide monthly bank/brokerage statements from January 1, 2024" for Aegean Associates reflecting the location of any funds removed or transferred from Aegean's bank accounts.

Paul did not seek review of the May 25 order by filing a motion under Code § 8.01-676.1(E) in the then-pending appeals in Record Nos. 0068-24-1 and 0077-24-1. Instead, he filed a notice of appeal, which was docketed here as Record No. 1045-24-1.  Paul argues in that appeal that the trial court lost jurisdiction under Rule 1:1 to extend the stay conditions to him because the May 25 order was entered more than 21 days after the December 12, 2023 final order.

In June 2024, Tasos moved the chancellor to compel enforcement of the stay conditions against Paul, attaching exhibits to show that Paul continued to withhold the Aegean bank statements, failed to provide copies of new leases, failed to pay distributions, and refused to provide year-end financial statements for two companies.  Tasos asked that Paul be ordered again to comply with the May 25 stay conditions and that he also be ordered to show cause why he should not be held in contempt.  Paul responded that the chancellor lacked jurisdiction under Rule 1:1(a) to enter the May 25 order extending the stay conditions to him because "[m]ore than five months had elapsed since the entry of the Final Order."  Paul's response did not dispute Tasos's factual allegations that he had not abided by the stay conditions.

At the August 21, 2024 hearing that followed, when Paul's counsel stood on his jurisdictional objection, the chancellor responded, "It doesn't make any difference.  You can be held in contempt of a valid or invalid order, an incorrect order, until it's otherwise modified or it's changed by the appellate courts."  Paul's counsel responded, "Your Honor, I disagree with that," and he walked through his argument that the May 25 order was invalid because the

chancellor had lost jurisdiction. "That's the gist of this," he said; Paul "would have complied if there [were] a valid order."

Steve said that he "had concerns about Paul's actions and inactions." Steve added that he had "spent a lot of time trying to get Paul" to comply, to no avail. The chancellor gave Paul an opportunity to address the court personally, but Paul responded that he was "represented by counsel."

The chancellor would not countenance Paul's apparent disobedience of the court's orders. The chancellor explained that he issued the May 25 order "to cover all the brothers under the Court's equity powers to preserve an estate during any process of the appeal, absent direction from the appellate courts." The chancellor said that Paul was "not entitled to appeal a case and then harm the trust property, hide the money." Paul had essentially made himself his "own little Supreme Court" by "say[ing] that the order was void ab initio because [he] and the [chancellor] now are in disagreement."

The chancellor found Paul in criminal contempt and said that he was going to sentence him to ten days in jail. He also found Paul in civil contempt and announced that he would fine him $300 a day for every day he remained out of compliance with the stay conditions.

At that point, Paul's counsel changed course. He said that he and Paul had heard the court's concerns "loud and clear." He urged the court not to find Paul in criminal contempt. When the chancellor asked if there were any practical reason why Paul could not comply with the stay conditions, his counsel answered, "I don't believe so, Your Honor. I believe that we can comply." In a rare show of unity, Steve and Tasos also asked the chancellor to give Paul another chance and not to send him to jail.

After conferring with his client, Paul's counsel assured the court "that Paul is going to comply with all six of the requirements in terms of immediate hand-over of existing information

within ten days," with the K-1s to follow. Paul gave the court his personal assurance as well. In response, the chancellor said he would suspend execution of the ten-day jail sentence "conditioned upon" Paul's compliance.

On September 5, 2024, the court entered an order stating that:

> Paul . . . is found to be in criminal contempt and is sentenced to ten . . . days incarceration, which criminal contempt sentence is stayed conditioned on his compliance with the terms of the May 25, 2024 Order . . . and Paul is found to be in civil contempt and ordered to pay $300.00 per day commencing 9/1/24 for each day that he is not in compliance . . . .

The order added that "Paul's liability for attorney[] fees incurred by Tasos as a result of Paul's failure to comply with the Court's Orders are preserved and will be decided . . . at a later date."

On September 25, Paul moved the chancellor to reconsider the September 5 order, arguing that summary criminal contempt was inappropriate because his actions had not occurred "in the presence of the Court." Paul repeated his argument that the chancellor had lost jurisdiction to issue the May 25 order.

Two days later, Tasos moved again to enforce the stay conditions against Paul. Tasos asserted that Paul had still not provided all the required records and had told Tasos "do not contact me again."

At the October 4 hearing on those motions, Paul's counsel repeated that the court lacked jurisdiction to issue the May 25 order and that Paul's conduct had not occurred in the court's presence. The chancellor observed that Paul and his counsel had told the court at the previous hearing that Paul was going to comply, but he had not. The chancellor said that it constituted direct contempt for Paul to take the position that he was not going to comply based on his jurisdictional objection. The chancellor added, "It's hard for me to imagine more of a direct contempt than to walk into the Circuit Court and say, I'm not complying and I don't intend to comply."

The chancellor denied Paul's motion to reconsider, imposed contempt sanctions on Paul of $10,200, and increased the daily sanction from $300 to $600 a day until Paul complied. The chancellor directed Paul to appear in person for a hearing on November 14 and warned that, if he were still not in compliance, "then under the civil contempt finding, the Court will consider taking him into custody at that time." The chancellor found that Paul had "misrepresented his position to the Court."

Also on October 4, Paul filed a notice of appeal from the chancellor's September 5 contempt order. That appeal was docketed here as Record No. 1661-24-1.

On October 7, the chancellor issued a show-cause order, returnable to November 14, directing Paul to show cause why he "should not be held in civil contempt and fined or imprisoned for failure to comply with the orders entered herein on May 25, 2024, and why the contempt order of September 5, 2024, should not now be modified to provide for additional sanctions." Andrew Protogyrou entered his appearance as counsel for Paul for the civil contempt matters.

On October 27, the chancellor issued an order, nunc pro tunc to October 4, memorializing the $600-per-day sanction at the October 4 hearing. The order granted Tasos's motion for attorney fees for enforcing the May 25 and September 25 orders, in an amount to be determined after further argument. The order also warned that Paul would be taken into custody under the court's civil contempt powers if he were not in compliance with the stay conditions at the November 14 hearing. That matter was continued to December 18, 2024.[3] On November 25, Paul noted a timely appeal of the October 27 contempt order, and that appeal was docketed here as Record No. 1953-24-1.

---

[3] While it appears that a hearing of some sort occurred on November 14, the transcript is not in the record.

At the December 18 hearing, Tasos provided sworn testimony to show that Paul had still not complied with the stay conditions. That morning, however, Paul's counsel had tendered a stack of documents to the court that he represented were the records Paul was required to produce; Paul also filed a pleading describing his response. Tasos's counsel said he had received the pleading but not the records.

Protogyrou assured the chancellor that, now that he was involved as contempt counsel, Paul had "turned a corner, and we're prepared to continue compliance with the Court's orders." Protogyrou asked the chancellor not to impose further monetary sanctions on Paul and to dismiss the criminal-contempt citation.

The chancellor was not ready to do that and said that Paul's insistence that he did not have to comply with the court's orders constituted direct contempt. But the chancellor noted that he had suspended that contempt citation "and it will remain suspended, and hopefully there will be reasons to justify continuing suspension and a possible dismissal of that finding at a later date." The chancellor initially declined to relieve Paul of the $600-per-day violation and said he would enter a judgment against him for $45,500, payable in 90 days to the circuit-court clerk. But after Protogyrou assured the court that he would work to have Paul comply with the order and that suspending that penalty would help, the chancellor agreed to suspend that penalty too, pending proof that Paul would comply. Still, the chancellor granted Tasos's motion for attorney fees of $14,207.70 for having to bring the motion to compel enforcement.

Paul challenges two of the orders—entered a month apart—memorializing the chancellor's December 18 bench rulings. First, the chancellor entered an order dated December 19, 2024, awarding Tasos $14,207.70 in attorney fees. Paul timely appealed that order, and the appeal was docketed here as Record No. 0124-25-1. Second, the chancellor entered an order on January 29, 2025, confirming the contempt sanction of $45,500 (calculated using the $600-per-

- 11 -

day figure), but declining to enter judgment "conditioned upon future compliance." Paul also appealed that order, and the appeal was docketed here as Record No. 0370-25-1.

In between those two orders, on December 30, 2024, we affirmed the chancellor's final order by published opinion in *Galiotos II*. Although Steve filed a petition for appeal with the Supreme Court, Paul did not. Steve's appeal there remains pending.

The parties told us at oral argument that, as the Supreme Court has not yet resolved Steve's petition for appeal, the chancellor's stay conditions remain in place and Tasos has not filed further motions to compel Paul to comply with the stay conditions.[4]

ANALYSIS

Paul challenges each of the orders at issue here on the ground that the trial court under Rule 1:1(a) lost jurisdiction over him 21 days after the December 12, 2023 final order. So he argues that the trial court lacked jurisdiction to enter the May 25, 2024 order extending the stay conditions to him and that it also lacked jurisdiction to hold him in contempt for violating the stay conditions. He also argues that the criminal-contempt citation was not a valid exercise of the court's summary-contempt power because not all of the alleged misconduct occurred in the presence of the court. Tasos responds that the chancellor had jurisdiction to issue and modify the

---

[4] Three weeks before oral argument, two of Paul's three lawyers moved to withdraw as counsel in four of the five cases on appeal, Record Nos. 1953-24-1, 1661-24-1, 0124-25-1, and 0370-25-1. No motion to withdraw was filed in Record No. 1045-24-1, in which Paul's counsel less than two weeks earlier had completed supplemental briefing requested by the panel on whether we have jurisdiction over the appeal. The motion to withdraw in the four cases in which it was filed alleged that Paul "has failed to meet his contractual obligations to [Woods Rogers Vandeventer Black PLC] and there has been a significant breakdown in communication over the past several months." The motion to withdraw omitted reference to a third lawyer from the same firm who has also entered an appearance in each of the appeals. Given the considerable judicial resources already invested in evaluating these five appeals, the fact that the withdrawal motion was filed in only four of the five appeals, the imminence of oral argument, and the obvious prejudice to Paul if all of his lawyers withdrew without substitute counsel's entering an appearance (assuming the motions are construed to mean that all of his lawyers seek withdrawal in each of the five appeals), we denied the motion to withdraw in the four appeals in which it was filed.

- 12 -

stay conditions under Rule 1:1B(a)(3).  He also says that the threat of jail was not a criminal-contempt sanction but a civil-contempt sanction to coerce Paul's compliance with the stay conditions.

Whether the trial court had jurisdiction to enter the May 25 order and the contempt orders enforcing it are questions of law that we review do novo.  *Andrews v. Richmond Redev. & Hous. Auth.*, 292 Va. 79, 85 (2016).  Whether the ten-day jail sentence in the September 5 order constituted criminal or civil contempt also presents a question of law that we review de novo. *Mills*, 70 Va. App. at 373.[5]

### A. The chancellor had jurisdiction under Rule 1:1B(a)(3) to issue the May 25, 2024 order extending the stay conditions to Paul.[6]

Rule 1:1(a) addresses the "[e]xpiration" of the trial court's jurisdiction.  It provides that "[a]ll final judgments, orders, and decrees . . . remain under the control of the trial court and may be modified, vacated, or suspended for [21] days after the date of entry, *and no longer*."  Rule 1:1(a) (emphasis added).

The major theme running through each of Paul's appeals is that, under Rule 1:1(a), the chancellor lost jurisdiction 21 days after issuing the December 12, 2023 final order, so the May 25, 2024 order extending the stay conditions to Paul was void ab initio.  Likewise, he says, all the contempt orders entered more than 21 days after the final order were void.  It is, of course,

---

[5] Citing *Fisher v. Salute*, 51 Va. App. 293, 303 (2008), Paul acknowledges that "[w]hen trial courts have jurisdiction and authority to enter an order, a trial court's exercise of its contempt power is reviewed under an abuse of discretion standard."  *See also Orndoff v. Commonwealth*, ___ Va. ___, ___ (Sept. 25, 2025) (applying abuse-of-discretion standard).  But Paul focuses his challenges on the trial court's jurisdiction and authority to impose summary criminal contempt.  He does not contend that the trial court erred in finding that he disobeyed the stay conditions, assuming that the court had jurisdiction.

[6] No. 1045-24-1 (Assignments of Error 1-2); No. 1661-24-1 (Assignments of Error 1-3); No. 1953-24-1 (Assignments of Error 1-3); No. 0124-25-1 (Assignments of Error 1-2); No. 0370-25-1 (Assignments of Error 1-2).

"well settled that disobedience of, or resistance to a void order, judgment, or decree is not contempt." *Sasson v. Shenhar*, 276 Va. 611, 624 (2008) (quoting *Leisge v. Leisge*, 224 Va. 303, 306 (1982)).

But Paul has consistently shortchanged Rule 1:1B(a)(3), which makes clear that the trial court retains concurrent jurisdiction with the appellate court to resolve disputes about the conditions for a stay pending appeal. That rule addresses the "jurisdictional transfer" during the appeal of a final order. It is relatively new, having become effective only in 2019. *See* Order (Va. July 2, 2019), at https://perma.cc/P4F6-F2DY. But it pulls together various rules and statutory provisions that permit a trial court to engage in certain limited functions during the pendency of an appeal despite the expiration of the 21-day period. For instance, the trial court retains the authority to resolve disagreements about the contents of the record on appeal in accordance with the rules of court. *See* Rule 1:1B(a)(3)(H) (incorporating Rules 5:10(b) & 5A:7(b)).

As relevant here, Rule 1:1B confers concurrent jurisdiction on the trial court to grant and modify a stay pending appeal and to set and modify the security to suspend execution pending appeal. *See* Rule 1:1B(a)(3)(A), (B). In truth, those subsections added nothing new to Virginia law. They simply restated existing principles. In 2016, for instance, the Supreme Court made clear that the "trial court retains jurisdiction beyond the 21 days to set a bond to suspend execution of a judgment or to modify the terms of the security for the appeal." *Velazquez v. Commonwealth*, 292 Va. 603, 614 (2016) (citing Code § 8.01-676.1).

Paul's starting premise is thus mistaken that the chancellor lost all jurisdiction over him 21 days after the December 12, 2023 final order. While Steve's and Paul's notices of appeal immediately established appellate jurisdiction in the Court of Appeals, the circuit court retained "concurrent jurisdiction for the purposes" listed in the rule. Rule 1:1B(a)(1). Those purposes

included "addressing motions to stay the judgment pending appeal" and "motions and objections . . . to the amount or form of a[] . . . suspending bond pursuant to Code § 8.01-676.1." Rule 1:1B(a)(3)(B), (C). Tasos's motion to enforce the stay conditions in the original December 12 order fell comfortably within the trial court's concurrent jurisdiction under those provisions. While the chancellor did not grant the specific relief Tasos requested—enforcing the original stay order against Paul—the chancellor modified the stay conditions themselves to extend them to Paul.[7] Doing so was permissible under Rule 1:1B(a)(3)(B). Just as in federal practice, the rule here permits the trial court "to maintain the status quo during the pendency of the appeal." 20 Moore's Federal Practice—Civil § 303.32[2][b][ii], at 303-80.3 & n.21 (3d ed. 2025) (collecting cases). Such motions "do not impinge upon appellate court review but rather assist 'in maintaining the true status quo pending appeal.'" *W.R. Grace & Co. v. Libby Claimants*, 2008 U.S. Dist. LEXIS 86958, at *16-17 (D. Del. Oct. 28, 2008) (quoting *Sansom Comm. v. Tr. of the Univ. Pa.*, 735 F.2d 1552, 1554 (3d Cir. 1984)).[8]

> B. *The Court lacks appellate jurisdiction in Record No. 1045-24-1 because Paul failed to seek appellate review of the stay ruling in the appeal of the underlying decision.*

In Paul's appeal from the May 25 order (Record No. 1045-24-1), Tasos moved to dismiss the appeal for lack of appellate jurisdiction, arguing that Paul was required to seek review of that order in the then-pending appeal of the underlying judgment (Record Nos. 0068-24-1 & 0077-24-1). Although a motions panel of this Court initially denied his motion, we vacated that

---

[7] We thus reject the notion that the May 25 order was a "Sua Sponte" order. The chancellor did not enter the order sua sponte but rather in response to Tasos's motion to enforce the stay. The relief awarded—extending the stay conditions to Paul—fell comfortably within the request in Tasos's motion for "such other relief as the Court deems appropriate."

[8] Because the chancellor had jurisdiction under Rule 1:1B(a)(3) to extend the stay conditions to Paul, we do not reach Paul's argument that the chancellor lacked jurisdiction to award the equivalent of an injunction pending appeal. No. 1045-24-1 (Assignment of Error 2); No. 1661-24-1 (Assignment of Error 3); No. 1953-24-1 (Assignment of Error 3); No. 0124-25-1 (Assignment of Error 1); No. 0370-25-1 (Assignment of Error 1).

ruling and directed the parties to file supplemental briefs on the jurisdictional question. We now grant Tasos's motion to dismiss that appeal.

When a party is aggrieved by a trial court's decision to stay a judgment pending appeal or to set or modify the terms of the security to suspend execution pending appeal, appellate review lies only in the appellate court that is hearing the underlying appeal. In other words, when Paul objected to the chancellor's May 25 order extending the stay conditions to him, he should have sought review in the then-pending appeal of the underlying judgment (Record Nos. 0068-24-1 & 0077-24-1), not by noticing a new appeal to proceed on a different track before a different three-judge panel of the Court of Appeals. We reach this conclusion for four reasons.

First, the May 25 order extending the stay conditions to Paul does not qualify as an appealable order under any standalone code provision. Our appellate jurisdiction is restricted to what "'the General Assembly may from time to time establish'" and is "'entirely prescribed by statute.'" *NAACP (Hanover Cnty.) v. Commonwealth ex rel. Va. State Water Control Bd.*, 74 Va. App. 702, 707-10 (2022) (per curiam) (first quoting Va. Const. art. VI, § 1; and then quoting *Canales v. Torres Orellana*, 67 Va. App. 759, 774 (2017) (en banc)). In civil cases like this one (with exceptions not relevant here), our appellate jurisdiction is confined to appeals from "any final judgment, order, or decree of a circuit court in a civil matter" and from any "interlocutory decree or order pursuant to § 8.01-267.8 (Multiple Claimant Litigation Act) or 8.01-675.5 (certified appeals involving controlling questions of law)." Code § 17.1-405(A)(3), (4). The May 25 order does not qualify for appellate review under any of those provisions. It is not a "final order." Nor is it either of the only two types of interlocutory orders mentioned there.[9]

---

[9] It is also not appealable under Code § 19.2-318 as an order holding a party in contempt. We discuss that basis for appellate jurisdiction in the next section.

Second, Rule 1:1B(a)(3) makes clear that the appellate court hearing the pending appeal is the one to review the trial court's rulings involving a stay pending appeal or a question about the security required to stay execution pending appeal. After the notice of appeal is filed, the trial court and the appellate court enjoy "concurrent" jurisdiction over such motions. Nothing in Rule 1:1B vests appellate jurisdiction in a different panel of the Court of Appeals from the one adjudicating the underlying appeal.

Third, Code § 8.01-676.1(E)(1) also makes clear that trial-court rulings on such motions are reviewed by the appellate court hearing the underlying appeal: "Any party aggrieved by the decision of the trial court . . . may request a review of such decision *by the appellate court before which the case is pending*." Code § 8.01-676.1(E)(1) (emphasis added). Subsection (E)(2) then specifies the procedure to seek such review:

> The Court of Appeals or the Supreme Court may order that the penalty or any other terms or requirements of the security for the appeal or of the security for the suspension of execution of a judgment be modified for good cause shown (i) upon the motion of any party or (ii) if such request is made in the brief of any party . . . .

Code § 8.01-676.1(E)(2). Indeed, it would make no sense for a new and different appellate panel to get up to speed on issues that are already pending before the merits panel hearing the underlying appeal.

Finally, as shown by what happened here, commencing a new appeal to challenge a trial court's stay ruling takes much longer than simply asking for direct review by the appellate tribunal hearing the appeal. Paul could have asked the panel handling his merits appeal in Record No. 0077-24-1 to review and modify the May 25 order extending the stay conditions to him. He could have sought such review by separate "motion" filed in that case, or he could have included that request in the reply brief that he filed there on June 5, 2024. *See*

- 17 -

Code § 8.01-676.1(E)(2)(i) and (ii). The panel handling the merits appeal would then have resolved that dispute as part of *Galiotos II*, decided in December 2024.

*Galiotos II* is now concluded in this Court. And we have no independent jurisdictional basis to consider Paul's appeal of the chancellor's May 25 ruling extending the stay conditions to him. So we grant Tasos's motion and dismiss the appeal in Record No. 1045-24-1.

### C. The Court lacks appellate jurisdiction over one of the appeals of the chancellor's contempt orders.

Neither Paul nor Tasos has addressed whether we have appellate jurisdiction under Code § 19.2-318 over Paul's appeals of the various contempt orders. Code § 19.2-318 provides: "From a judgment for any civil contempt of court an appeal may be taken to the Court of Appeals. A writ of error shall lie from the Court of Appeals to a judgment for criminal contempt of court."

The contemnor may appeal a judgment for contempt when the order "adjudicates all issues of guilt and imposes a sentence." *Street v. Street*, 24 Va. App. 14, 19 (1997). It remains appealable even when execution of the judgment is "suspended." *Weston v. Commonwealth*, 195 Va. 175, 177 (1953). Thus, an order imposing a daily fine until the contempt is purged is appealable even if collection of the fine is stayed. *See Edwards v. Vesilind*, 292 Va. 510, 519 (2016) (daily fine of $100, stayed pending appeal); *HCA Health Servs. of Va., Inc. v. Levin*, 260 Va. 215, 219-20 (2000) (daily fine of $150, stayed by the Court of Appeals). But "[a] judgment of contempt that suspends or reserves the imposition of a penalty is not 'final' and, therefore, is not appealable." *Peet v. Peet*, 16 Va. App. 323, 326 (1993). For example, the contempt order was not appealable in *E.I. Du Pont de Nemours & Co. v. Universal Moulded Products Corp.*, 189

Va. 523 (1949), because the order said that the trial court "withholds the imposition of penalty, if any," for 20 days. *Id.* at 525-26.[10]

The September 5 contempt order in Record No. 1661-24-1 is appealable because the court found Paul in contempt and specified the penalty. The order sentenced Paul to ten days' incarceration, though it stayed execution of the sentence conditioned on his compliance with the May 25 order. Likewise, the order required Paul to pay $300 per day for each day after September 1 that Paul was not in compliance with the May 25 order, though it conditionally stayed execution if Paul complied "on or before August 31." *Accord Peet*, 16 Va. App. at 323-24 (finding contempt order appealable where it sentenced husband to 15 days in jail, "suspended on the condition that he comply with the support decree").

The October 27 contempt order in Record No. 1953-24-1 is also appealable. The chancellor entered judgment against Paul and ordered him to pay $10,200 in "civil contempt sanctions" within 90 days. Paul was also ordered to pay $600 per day for each day after October 4 that he was not in compliance.[11]

The December 19 contempt order in Record No. 0124-25-1 is appealable because it ordered Paul to pay $14,207.70 in attorney fees, the court having previously granted Tasos's motion for fees in the October 27 order.

---

[10] Paul argues in his seriatim appeals that he had to appeal each contempt order as it was issued, thus explaining why the Court is presented with so many separate appeals here. In *Street*, however, we explained that even though "[a] contempt order is appealable if it adjudicates all issues of guilt and imposes a sentence," the contemnor may choose instead to wait to note his appeal until the entry of a final order that liquidates the contempt sanction and leaves nothing remaining to be done. 24 Va. App. at 19-20; *cf. French v. Chapin-Sacks Mfg. Co.*, 118 Va. 117, 121 (1915) (holding that the failure to pursue interlocutory review of a temporary injunction under the statutory predecessor to Code § 8.01-626 did not prohibit review of the injunction on appeal from the final order); *P.J. Potter Enters., Inc. v. Comfort Sys. of Va., Inc.*, 83 Va. App. 626, 637 (2025) (following *French*).

[11] Although the October 27 order also granted Tasos's motion for attorney fees to enforce the prior orders, it reserved awarding judgment for a particular amount.

But the January 29, 2025 contempt order in Record No. 0370-25-1 is not appealable. The court "decline[d] to enter sanctions on the show cause, conditioned on future compliance." An order *declining* to hold a party in contempt is not appealable. *See Jenkins v. Mehra*, 281 Va. 37, 50-51 (2011); *Newton v. Newton*, 66 Va. App. 20, 21-23 (2016). And although the court confirmed that Paul was liable for $45,500 in contempt sanctions ($600 per day for 75 days from October 4), the order states—unlike the prior orders—that the court "declines to enter judgment, conditioned upon future compliance." An appeal is allowed under Code § 19.2-318 only from a "judgment" for criminal or civil contempt. As the January 25 order entered no such judgment, it is not appealable. We therefore dismiss that appeal.

*D. The September 5, October 27, and December 19 contempt orders are valid.*[12]

Paul is mistaken that each of these three contempt orders is void on the theory that the trial court lost jurisdiction to issue the May 25 order and then to hold Paul in contempt for violating it. As shown above, the trial court had jurisdiction under Rule 1:1B(a)(3)(B) to set the stay conditions applicable to the parties pending appeal, as well as to modify those conditions.[13] And because the trial court was empowered to impose and modify the stay conditions, it also had the inherent power to enforce those conditions by holding Paul in contempt for violating them. "The power to punish for contempts is inherent in all courts." *Ex Parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1873). So too in Virginia, where "[i]t has long been established that Virginia courts possess an 'inherent power' to punish for contempt." *Orndoff v. Commonwealth*, ___ Va. ___, ___ (Sept. 25, 2025); *Parham v. Commonwealth*, 60 Va. App. 450, 455 (2012) (recognizing that the inherent power of contempt is "as ancient as[] courts themselves" (quoting

---

[12] No. 1661-24-1 (Assignments of Error 1-3); No. 1953-24-1 (Assignments of Error 1-3); No. 0124-25-1 (Assignments of Error 1-2).

[13] This case does not require that we consider whether conditions for a stay pending appeal may be extended to or enforced against nonparties.

- 20 -

*Carter v. Commonwealth*, 2 Va. App. 392, 395 (1986))). "This inherent authority not only ensures compliance with court orders but also upholds public confidence and respect for the judiciary, both of which are essential to protecting and enforcing the rights of the people." *Orndoff*, ___ Va. at ___. "Without such power, . . . the administration of the law would be in continual danger of being thwarted by the lawless." *Ex Parte Terry*, 128 U.S. 289, 303 (1888).

1. *The September 5 order (Record No. 1661-24-1)*

The September 5 order recited that Paul "is found to be in criminal contempt and is sentenced to ten . . . days incarceration, which criminal contempt sentence is stayed conditioned on his compliance with the May 25, 2024 Order." Additionally, Paul was found "in civil contempt and ordered to pay $300.00 per day commencing September 1, 2024 for each day he is not in compliance with the terms."

"[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." *Int'l Union v. Bagwell*, 512 U.S. 821, 827 (1994). "Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required." *Id.* at 831.

By contrast, criminal contempt punishes the offender for his contemptuous conduct. *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 444 (1986). "'Criminal contempt is a crime in the ordinary sense,' and 'criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings.'" *Bagwell*, 512 U.S. at 826 (first quoting *Bloom v. Illinois*, 391 U.S. 194, 201 (1968); and then quoting *Hicks v. Feiock*, 485 U.S. 624, 632 (1988)). Such protections include "the requirement that the offense be proved beyond a reasonable doubt." *Hicks*, 485 U.S.

at 632. While the contemnor does not have the right to a jury trial for contempts punishable up to six months in jail, the right to a jury trial applies for more serious punishments. *Bagwell*, 512 U.S. at 826-27.

The common law of England, which generally remains our law unless changed by the General Assembly, Code § 1-200, distinguished between two types of criminal contempt. If the contempt occurred in the court's presence, it was considered direct or summary contempt; otherwise it was an indirect or constructive contempt. For instance, Blackstone distinguished between contempt "committed in the face of the court," for which "the offender may be instantly apprehended and imprisoned," from "matters that arise at a distance," for "which the court cannot have so perfect a knowle[d]ge." 4 William Blackstone, *Commentaries* *283. The latter required the issuance of formal process to proceed against the contemnor. *Id.*

Courts have carried forth that distinction to modern times. "[T]he substantial difference between a direct and a constructive contempt is one of procedure." *Orndoff*, ___ Va. at ___ (quoting *Burdett v. Commonwealth*, 103 Va. 838, 845 (1904)). "Where the contempt is committed in the presence of the court, it is competent for [the court] to proceed upon its own knowledge of the facts, 'and to punish the offender without further proof, and without issue or trial in any form.'" *Burdett*, 103 Va. at 846 (quoting *Ex parte Terry*, 128 U.S. at 309); *see also Carter*, 2 Va. App. at 396 ("Criminal contempt occurring in the presence of the court is sometimes referred to as direct contempt."). "In light of this procedure, direct contempt is also known as summary contempt." *Orndoff*, ___ Va. at ___. "[I]t is criminal and punitive in character, and the guilt of the alleged contemnor must be established beyond a reasonable doubt." *Id.* (quoting *Weston*, 195 Va. at 184). Summary criminal contempt is "reserved for 'exceptional circumstances . . . such as acts threatening the judge or disrupting a hearing or

- 22 -

obstructing court proceedings.'" *Id.* (quoting *Vaughn v. City of Flint*, 752 F.2d 1160, 1167 (6th Cir. 1985)).

But for indirect contempt, due process requires "the full panoply of constitutional rights: notice of the charge, right to counsel, presumption of innocence, as well as the opportunity to present evidence and to cross-examine adverse witnesses." *Id.* (quoting *Parham*, 60 Va. App. at 458); *see also Scialdone v. Commonwealth*, 279 Va. 422, 443 (2010) (listing due-process requirements); *In re Oliver*, 333 U.S. 257, 275 (1948) (same). Imposing criminal punishment "without issue or trial [is] so contrary to the usual and ordinarily indispensable hearing before judgment, constituting due process, that the assumption that the court saw everything that went on in open court [is] required to justify the exception." *Orndoff*, ___ Va. at ___ (quoting *Scialdone*, 279 Va. at 444). Thus, for summary contempt to be available, a court "must first ask if the contemptible conduct occurred 'in open court, in the presence of the judge' and whether 'all of the elements of the misconduct [were] actually observed by the court[.]'" *Id.* at ___ (quoting *Scialdone*, 279 Va. at 444).

Paul argues that summary criminal contempt was improper here because not all his alleged misconduct occurred in the chancellor's presence. The chancellor, for instance, did not personally observe Paul's failure to pay distributions or provide documents to Tasos. *See, e.g.*, *Davis v. Commonwealth*, 219 Va. 395, 397-98 (1978) (holding that defendant's failure to produce subpoenaed records was indirect contempt). And the statement by Paul's lawyer that Paul "would have complied if there [were] a valid order" does not establish misconduct in the court's presence because the "confession of the party" or the "testimony under oath of others" is not "personal knowledge [of the misbehavior]" by the court. *Scialdone*, 279 Va. at 444 (quoting *Cooke v. United States*, 267 U.S. 517, 537 (1925)).

- 23 -

Tasos responds that, although the September 5 order said that the ten-day jail sentence was for "criminal contempt," it was, in truth, a civil-contempt sanction. We agree.

The fact that a contempt sanction calls for imprisonment does not make it criminal contempt. "Where a fine or imprisonment imposed on the contemnor is 'intended to be remedial by coercing the defendant to do what he had refused to do,' the remedy is one for civil contempt." *Penfield Co. v. SEC*, 330 U.S. 585, 590 (1947) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 441, 442 (1911)). "[T]hose who are imprisoned until they obey the order, 'carry the keys of their prison in their own pockets.'" *Id.* (quoting *In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902)). "Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do." *Gompers*, 221 U.S. at 442.

We are not unmindful that the chancellor himself said he was sanctioning Paul for criminal contempt, but the trial court's view that the proceeding was "criminal in nature" is "not determinative." *Hicks*, 485 U.S. at 630. "[T]he 'labels affixed to the [contempt] proceeding or the relief imposed under state law . . . are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law.'" *Krieger v. Commonwealth*, 38 Va. App. 569, 579 (2002) (en banc) (second and third alterations in original) (quoting *Hicks*, 485 U.S. at 631). "[F]or if the trial court had imposed only civil coercive remedies, . . . then it would be improper to invalidate that result merely because the Due Process Clause, as applied in *criminal* proceedings, was not satisfied." *Hicks*, 485 U.S. at 638.

The ten-day jail sentence in the September 5 order was civil in nature because it was designed to coerce Paul into complying with the stay conditions. The chancellor "stayed" the jail sentence "conditioned on [Paul's] compliance with the terms of the May 25" order. Paul's counsel had urged the chancellor not to impose jailtime, asserting that Paul had heard the court's

- 24 -

message "loud and clear" and promising that Paul would now comply. After Paul himself personally assured the chancellor that he would obey the stay conditions, the chancellor agreed not to impose active jailtime but to suspend it "conditioned upon [Paul's] compliance." As Paul "'carried the keys' of his own cell door in his pocket," the "contempt proceeding and his resulting sentence were clearly civil in nature." *Krieger*, 38 Va. App. at 582. Indeed, at the December 2024 hearing, after his contempt lawyer insisted that Paul had "turned a corner" and would now comply with the stay conditions, the chancellor expressed hope that, with Paul's continued compliance, the prospect of jailtime would eventually dissipate.

We find no merit in Paul's remaining claim that the September 5 contempt rulings violated Paul's due-process rights. "Due process protects 'the opportunity to be heard' by requiring, at a minimum, 'some kind of notice' and 'some kind of hearing.'" *Fairfax Cnty. Sch. Bd. v. S.C.*, 297 Va. 363, 376 (2019) (quoting *Goss v. Lopez*, 419 U.S. 565, 579 (1975)). Paul was afforded ample "notice and an opportunity to be heard." *Bagwell*, 512 U.S. at 827. Nearly a month in advance of the August 21 hearing, Tasos moved to compel enforcement of the stay conditions, laying out Paul's serial failures since the May 25 order. Tasos simultaneously asked the chancellor to hold Paul in contempt "until he complies." Paul's lawyer filed a brief in response, standing on his jurisdictional objection. At the August 21 hearing, the chancellor heard from Paul's lawyer, also giving Paul a chance to address the court directly, though Paul initially declined. After the chancellor said he would impose jailtime and daily sanctions to enforce compliance, Paul and his counsel had another opportunity to address the court, now promising that Paul would comply going forward. The chancellor then agreed to suspend both the jailtime and the $300-per-day sanction, conditioned on future compliance. Paul thus had ample notice of the charges against him and the opportunity to be heard before the chancellor issued the September 5 order.

*2. The October 27 order (Record No. 1953-24-1)*

The October 27 order was also a proper exercise of the chancellor's civil-contempt authority, memorializing his rulings at the October 4 hearing.[14] The chancellor calculated that Paul owed $10,200 for his 34-day delay in complying with the stay conditions. Although the order required that the sanctions be paid to the clerk of the Virginia Beach Circuit Court, not to Tasos, that does not make it punitive rather than coercive. The sanctions "were clearly designed to coerce compliance with the court's orders, rather than to punish . . . for . . . contemptuous conduct." *Sheet Metal Workers*, 478 U.S. at 444. A fine "payable to the court is . . . remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Hicks*, 485 U.S. at 632. Similarly, the threat of $600 per day in contempt sanctions was coercive and civil in nature. It was payable only if Paul failed to comply with the court's stay conditions after the October 4 hearing.

Paul's due-process objections to the October 27 order are likewise meritless. Tasos moved to enforce the stay conditions a week before the October 4 hearing, laying out Paul's continued failure to comply and asking the court again to hold Paul in contempt. Paul's counsel was also given an opportunity at the October 4 hearing to address the court, though he continued to stand on his jurisdictional objection and his claim that summary contempt was inappropriate.

*3. The December 19, 2024 order (Record No. 0124-25-01)*

The December 19 order properly awarded $14,207.70 in attorney fees to Tasos as a civil-contempt sanction. "A trial court is authorized to make an award of monetary damages in a civil contempt proceeding to 'compensate a plaintiff for losses sustained because a defendant

---

[14] Although Paul argues that the trial court erred in entering the October 27 order "nunc pro tunc" to October 4 (Assignment of Error 6), he does not claim that the order failed to fairly capture the trial court's rulings from the bench. Nor does he identify any prejudice that he suffered as a result. Thus, any error invoking the nunc pro tunc doctrine was harmless. *See* Code § 8.01-678.

disobeyed a court's order.'" *Lee v. Spoden*, 290 Va. 235, 247 (2015) (quoting *Bagwell v. Int'l Union*, 244 Va. 463, 475 (1992), *rev'd on other grounds*, 512 U.S. 821 (1994)); *Leisge*, 224 Va. at 306-09 (upholding $25,000 attorney-fee award to the mother as a civil-contempt sanction for enforcing the custody order against the father). Although the December 19 order does not recite that the fee award was for civil contempt, the procedural posture makes clear that it was. The September 5 order reserved ruling on Tasos's claim for attorney fees "as a result of Paul's failure to comply with the Court's orders." The October 27 order then granted Tasos's request for fees "in enforcing" the earlier orders "in an amount to be determined." The resulting fee award was thus part of the civil-contempt remedy.

Here too, we reject Paul's claim that the December 19 order violated his due-process rights. Tasos moved for his attorney fees on September 27, 2024. The earlier orders made clear that the court had taken under advisement the amount of fees to award as a civil-contempt sanction. Paul chose not to file an opposition in advance, but he responded in person (through counsel) at the December 18 hearing on the fee motion, "adopting the arguments made in the prior hearings about the fees related to compliance with those orders." Paul thus had ample notice and opportunity to be heard.

Likewise, Paul had notice at the October 4 hearing that the chancellor was increasing the daily contempt sanction from $300 to $600 per day for every day after October 4 that Paul continued to disobey the stay conditions. After Paul still had not complied, his counsel was afforded the opportunity to address the court at length at the December 18 hearing. Indeed, Protogyrou persuaded the chancellor to suspend execution of the $45,500 sanction, contingent on future compliance, assuring the court that Paul had turned the corner and would now comply. Paul thus received ample notice and opportunity to be heard before the chancellor issued the January 29 order.

### 4. Paul's claims under Code § 18.2-457

Paul claims that the September 5, October 27, and January 29 contempt orders violated Code § 18.2-457 by imposing a penalty of $300 per day or $600 per day for every day he was in violation of the stay conditions.[15] The statute provides that "[n]o court shall, without a jury, for any such contempt as is mentioned in the first class embraced in § 18.2-456 (direct contempt for misbehavior in the court's presence) impose a fine exceeding $250." Code § 18.2-457. We do not reach this argument, however, because Paul failed to raise it below. *See* Rule 5A:18.

CONCLUSION

Paul gambled that he could ignore the chancellor's stay conditions and defeat any contempt charges by arguing that the chancellor had lost jurisdiction over the case. But Rule 1:1B makes clear that Paul miscalculated. That rule gave the trial court concurrent jurisdiction to issue and modify the conditions of the stay pending appeal. And "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *Sasson*, 276 Va. at 624 (quoting *Local 333B v. Commonwealth*, 193 Va. 773, 783-84 (1952)). "[E]ven where a party maintains that an order of a court is void, the appropriate action . . . is to appeal that order, or to attack it in a collateral proceeding, while still submitting to the court's jurisdiction." *Id.* In other words, "[w]hen one subject to a court order disobeys that order contending the order is void, he does so at his peril, as appellant did here." *Epps v. Commonwealth*, 47 Va. App. 687, 702 (2006) (en banc).

---

[15] No. 1661-24-1 (Assignment of Error 5); No. 1953-24-1 (Assignments of Error 4-5); No. 0370-25-1 (Assignment of Error 3).

- 28 -

We dismiss the appeals in Record Nos. 1045-24-1 and 0370-25-1 for lack of appellate jurisdiction.  But we affirm the September 5, October 27, and December 19, 2024 contempt orders.

Nos. 1045-24-1, 0370-25-1—*Dismissed*.

Nos. 1661-24-1, 1953-24-1 and 0124-25-1—*Affirmed.*